PINE OAK BUILDERS,
INC., Appellant,

v.

GREAT AMERICAN LLOYDS INSURANCE COMPANY and Mid–Continent Casualty Company, Appellees.

No. 14–05–00487–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 6, 2006.

Rehearing Overruled Aug. 17, 2006.

Joseph H. Pedigo, Houston, Joseph S. Yardas, Conroe, for appellant.

Christopher Lee Burke, San Antonio, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and GUZMAN.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant Pine Oak Builders, Inc., builds homes. Appellees, Great American Lloyds Insurance Co. and Mid–Continent Casualty Co., sold Commercial General Liability (CGL) insurance policies to Pine Oak. Pine Oak was subsequently sued by several homeowners, who alleged damages resulting from faulty construction. Pine Oak brought the present lawsuit to enforce lawsuit defense and liability indemnification provisions in the CGL policies.[1] Pine Oak moved for summary judgment, arguing that it proved its rights to defense and indemnity as a matter of law and that it is entitled to damages under article 21.55 of the Texas Insurance Code for appellees' failure to promptly pay its defense costs. In a joint motion for summary judgment, appellees argued that the policies did not cover the plaintiffs' claims in the underlying lawsuits. The trial court denied Pine Oak's motion and granted the appellees' motion.

The issues raised on appeal include (1) whether appellees owe a duty to defend in the underlying litigations, (2) whether appellees owe a duty to indemnify in the underlying litigations, (3) whether Pine Oak is entitled to damages under article 21.55 of the Texas Insurance Code, and (4) whether Pine Oak is entitled to a prospective award of attorney's fees for its defense costs in the underlying litigations. Finding that Great American owes a duty to defend in certain of the litigations and may owe a duty to indemnify in certain of

---

1. Although Pine Oak did not characterize it as such, its lawsuit is effectively a declaratory judgment action because it requests a declaration of rights regarding the duty to defend and the duty to indemnify under the CGL policies. Appellees filed a counterclaim that is correctly characterized as a declaratory judgment action.

the litigations, we affirm the trial court's summary judgment in part and reverse and remand in part.

## I. Background

Great American issued a succession of one-year CGL policies to Pine Oak, covering the period from April 5, 1993, to April 5, 2001. Mid–Continent issued two CGL policies to Pine Oak, covering from April 5, 2001, to April 5, 2003. Each of the policies provides that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [The insurer has] the right and duty to defend any 'suit' seeking those damages." The policies further state that the insurance agreement applies "only if: (1) the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' and (2) the 'bodily injury' or 'property damage' occurs during the policy period." The policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it."

The policies additionally contain certain exclusions. For example, the "your work" exclusion precludes coverage for "property damage" to " 'your work' arising out of it or any part of it and included in the 'products completed operations hazard.' " Both of the policies issued by Mid–Continent and the Great American policy beginning in April 2000 contain exclusions precluding coverage for property damage arising out of the "Exterior Insulating and Finish System hazard." The Exterior Insulating and Finish System, or "EIFS," is a synthetic-stucco type of exterior wall cladding. As explained below, most of the plaintiffs in the lawsuits underlying this coverage lawsuit allege damages relating to EIFS application on their homes. In their motion for summary judgment, appellees argued principally that the insuring language and exclusions in the policies operated to exclude coverage of the underlying lawsuits.

There are five underlying lawsuits, each brought by a homeowner who purchased a Pine Oak home either directly from the homebuilder or from a prior owner. Each home in question was built in the late 1990s. In the Sorrell lawsuit, the plaintiffs allege that either EIFS was not properly installed on their home or that use of EIFS on their home was not a proper application of the product. They further allege that the EIFS permitted water infiltration of the home every time there was a significant rainfall. They assert that the accumulation of moisture continuously caused damage and that new, independent damage occurred with each rainfall. The Fourrier plaintiffs make the same claims regarding EIFS as the Sorrell plaintiffs, but they additionally allege that (1) an inadequate chimney cap was installed, (2) insufficient grade clearance was permitted at column bases in the rear of the home, and (3) no expansion joint was installed in the second level floor line. The Glass plaintiffs allege various problems relating to the construction of a balcony in the rear of their home. Although their claims include allegations of resulting water damage, they do not make any EIFS-related claims. In the Vint lawsuit, the plaintiffs make EIFS-related claims similar to those of the Sorrell and Fourrier plaintiffs. They further allege that improper construction of the roof has caused it to sag. In the Barkley claim, the plaintiff alleges that the EIFS on his home failed and caused damages. He further alleges various other construction defects, including

inadequate draining, venting, and caulking, and improper sprinkler head installation. Also in the Barkley lawsuit, two co-defendants filed cross-actions alleging that Pine Oak failed to properly construct the home.

## II. Duty to Defend

In its first three issues, Pine Oak contends that the trial court erred in granting appellees' motion for summary judgment and denying Pine Oak's motion on the question of appellees' duty to defend Pine Oak in the underlying lawsuits. In their motion, appellees argued that as a matter of law they did not have a duty to defend. In its motion, Pine Oak argued that as a matter of law appellees did have a duty to defend. We utilize the normal standards of review in considering the trial court's grant of appellees' motion and denial of Pine Oak's motion. *See* TEX.R. CIV. P. 166a(c); *Fort Worth Osteopathic Hosp., Inc. v. Reese,* 148 S.W.3d 94, 99 (Tex.2004). When, as here, both parties have moved for summary judgment, each party must carry its own burden, and neither party can prevail simply because the other party failed to carry its burden of proof. *Pa. Pulp & Paper Co. v. Nationwide Mut. Ins. Co.,* 100 S.W.3d 566, 569 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

An insurer's duty to defend is determined under the so-called "eight-corners rule" by examining the allegations in the pleadings and the language of the insurance policy. *Nat'l Union Fire Ins. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997). Because the question of an insurer's duty to defend is a question of law, we conduct our review under a de novo standard. *Huffhines v.*

*State Farm Lloyds,* 167 S.W.3d 493, 496 (Tex.App.-Houston [14th Dist.] 2005, no pet.). In deciding whether appellees had a duty to defend in the present case, we must determine (1) whether and under what circumstances the CGL policies cover damage caused by defective construction, (2) whether the claims in the underlying lawsuits are generally covered by the policies, (3) whether the claims in the underlying lawsuits are excluded from coverage by the EIFS exclusion contained in certain of the policies, and (4) whether the damage claimed in each lawsuit "triggered" coverage under any of the policies.

### A. CGL Policies and Defective Construction

We begin by considering the language in the CGL policies. In their motion, appellees offered two compatible interpretations of the CGL policies: (1) the basic insuring agreement contained in the policies does not provide coverage for the types of events and the type of damages claimed by the plaintiffs in the underlying lawsuits, and (2) certain exclusions in the policies exclude coverage for these claims and damages.

The issue of whether CGL policies cover claims for defective construction is currently a contentious issue in Texas and nationally.[2] In *Lennar Corp. v. Great American Insurance Co.,* we held, in considering a fairly similar fact pattern, that CGL policies can cover these claims under certain circumstances. No. 14–02–00860–CV, 2006 WL 406609, at *12 (Tex.App.-Houston [14th Dist.] Feb. 23, 2006, pet. filed). As mentioned above, the insuring agreement in the CGL policies provides

2. The Texas Supreme Court has granted the petition for review filed in *Employers Mutual Casualty Co. v. Gehan Homes,* 146 S.W.3d 833 (Tex.App.-Dallas 2004, pet. granted). The Fifth Circuit has filed certified questions with

the Texas Supreme Court in *Lamar Homes, Inc. v. Mid–Continent Casualty Co.,* 428 F.3d 193 (5th Cir.2005). Both cases involve issues substantially similar to many of the issues raised in the case before us.

coverage "only if: (1) the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' and (2) the 'bodily injury' or 'property damage' occurs during the policy period." "Occurrence" is defined in the policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." In *Lennar*, we explained that Texas courts have defined "accident," which is left undefined in the policies, as including intentional acts that are negligently performed so long as the effect of the acts would not have been the intended or expected result if performance had not been negligent. *Id.* at *4. We then concluded that because the CGL policies define "occurrence" as "an accident," negligent or inadvertent defective construction that results in damage to the insured's own work and the result of which is unintended and unexpected can constitute an "occurrence" as defined in the policies. *Id.*

We additionally explained that the CGL policies generally incorporate what is known as the "business risk doctrine": the principle that an insurance policy should not cover defective construction that results in damage to the insured's own work. *Id.* at *7. The doctrine, however, is not incorporated in the basic insuring agreement or in the definition of "occurrence"; neither of those contains any language eliminating coverage for damage to the insured's work. *Id.* Instead, the doctrine is manifested in certain business risk exclusions, including the so-called "your work" exclusion discussed above. *Id.* In-

terpreting the insuring agreement or the term "occurrence" so as to exclude a situation in which an insured's defective construction damaged its own work would render the business risk exclusions, particularly the "your work" exclusion, meaningless. *Id.* at *9. This in turn would violate the well-established rule that we must read all parts of an insurance policy together so that none is rendered superfluous or meaningless. *Id.* (citing cases including *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 192–93 (Tex.2002)).

Furthermore, we held that the exclusions do not eliminate coverage for some business risks. In *Lennar*, the CGL policies each contained a subcontractor exception to the "your work" business risk exclusion. *Id.* at *10. Under the subcontractor exception, the "your work" exclusion "does not apply if the damaged work or the work out of which the damage arises was performed on [the insured's] behalf by a subcontractor." The exception demonstrates that the CGL policies were intended to cover defective construction resulting in damages to the insured's own work under certain circumstances. *Id.* at *11. To hold otherwise would render the subcontractor exception meaningless. *Id.*[3] In *Lennar*, the alleged defective construction in the underlying lawsuits was performed by subcontractors. Thus, we held that the CGL policies covered at least some of the alleged damages in the underlying lawsuits. *Id.* at *12 n. 29.

---

**3.** Appellees offer a scenario involving a subcontractor welding on one construction site and accidentally setting fire to an adjoining former construction site to suggest that the exclusion would not be rendered meaningless by finding that an event that causes damage only to the insured's own work could not be an "occurrence." However, the point of *Lennar* is that (1) the basic CGL insuring agree-

ment does not bar defective construction claims, (2) the business risk exclusions do generally bar such claims, and (3) the subcontractor exception restores coverage for such claims when they involve the work of a subcontractor. *See* 2006 WL 406609, at *12. The appellees' unlikely scenario, to which the subcontractor exception could also apply, does not alter the *Lennar* analysis.

Also, in *Lennar*, we addressed the insurers' argument that several other exclusions contained in the CGL policies operated to bar coverage for defective construction. *Id.* at *22–23, 27–29. We found that none of the exclusions in the standard CGL policies excluded such coverage. *Id.*[4]

█ In conclusion, because the standard CGL policies at issue in this case provide coverage for property damage caused by defective construction performed by a subcontractor, the trial court erred if it granted summary judgment based on appellees' argument that the policies do not cover this type of damage.

### B. Sub–Contractors

█ In its motion for summary judgment, Pine Oak contended that each of the underlying lawsuits involved allegations of faulty construction performed by a subcontractor or subcontractors on Pine Oak's behalf. Such facts would certainly be a prerequisite to coverage under the CGL policies' subcontractor exception to the "your work" exclusion. In applying the eight-corners rule for analyzing a duty to defend, we must give the allegations in the petitions a liberal interpretation. *Merchs. Fast Motor Lines*, 939 S.W.2d at 141. Generally, an insurer will be found to have a duty to defend if the petition in question

potentially states a cause of action within the policy coverage. *Id.* A review of the petitions in the Sorrell, Fourrier, Vint, and Barkley lawsuits reveals factual allegations that a subcontractor or subcontractors performed faulty construction on the houses at issue. Thus, each of these lawsuits fits under the subcontractor exception.

█ The petition in the Glass lawsuit is a different matter. Nowhere in this petition is the word "subcontractor" used, and nowhere in this petition are any facts alleged upon which an inference could be based that subcontractors were used in the construction of the Glass home. Nonetheless, Pine Oak contends that (1) in the absence of any affirmative or negative statement regarding subcontractors, the doubt regarding subcontractor use should be resolved in favor of coverage, and (2) extrinsic evidence established that subcontractors were used in the construction of the Glass home. We reject both contentions.

█ In its first argument, Pine Oak is correct that in reviewing a petition under an eight-corners analysis, we resolve any doubt regarding coverage in favor of the insured. *See id.* However, this does not mean that we presume coverage in the absence of any statement in the petition creating or disavowing coverage. To the

---

4. On appeal in this case, appellees assert that exclusion "n" applies so as to bar coverage of the claims in the underlying lawsuits irrespective of our holding in *Lennar*. Exclusion "n" is the so-called "sistership" exclusion, and it generally precludes coverage for

> Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
> (1) "your product";
> (2) "your work"; or
> (3) "impaired property";
> if such product, work, or property is withdrawn or recalled from the market or from

use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. In *Lennar*, we held under similar facts that while this exclusion might apply to the replacement of EIFS as a preventative measure (which the insured did in that case), it clearly did not exclude costs to repair water damage to the homes. 2006 WL 406609, at *23. Since the claims in the underlying lawsuits, in both *Lennar* and the present case, alleged water damage in addition to or instead of EIFS repair, replacement, or removal costs, the trial court erred if it granted summary judgment based on application of exclusion "n." *See id.*

contrary, if a pleading does not allege facts that would create coverage under the policy, an insurer is not legally required to defend the suit against its insured. *Id.* Stated conversely, when a pleading only alleges facts excluded by the policy, the insurer has no duty to defend. *Fid. & Guar. Ins. Underwriters, Inc. v. Mc-Manus,* 633 S.W.2d 787, 788 (Tex.1982); *King Chapman & Broussard Consulting Group, Inc. v. Nat'l Union Fire Ins. Co.,* 171 S.W.3d 222, 228 (Tex.App.-Houston [1st Dist.] 2005, no pet.). Further, in reviewing the pleadings, we will not read facts into them or imagine factual scenarios in order to find covered claims. *Merchs. Fast Motor Lines,* 939 S.W.2d at 142. The Glass petition clearly states that all of the alleged faulty construction was performed by Pine Oak. It does not raise the possibility that anyone else performed any of the faulty construction. Accordingly, we find that the claims in the Glass petition fall within the "your work" exclusion of the CGL policies and do not create any doubt regarding the subcontractor exception to the "your work" exclusion.

In its second argument, Pine Oak contends that it provided extrinsic evidence establishing that subcontractors were, in fact, used in the construction of the Glass home. Pine Oak attached to its motion for summary judgment an affidavit from Michael Harrison in which he avers that "[a]ll of the work performed on Plaintiff's [sic] house that is the subject of [the Glass lawsuit,] except supervision, was performed by subcontractors." Pine Oak contends that such extrinsic evidence may be used to establish a duty to defend under an insurance policy.

The eight-corners rule requires that we examine only the policy and the petition to determine whether a duty to defend exists. *See id.* at 141. Texas courts, however, have permitted limited exceptions to this rule. The cases fall into two categories: those permitting extrinsic evidence to establish only fundamental coverage facts and those permitting extrinsic evidence whenever that evidence does not contradict the pleadings. Clearly, the first category is much more narrow than the second category.

Regarding the first category, many courts have stated that extrinsic evidence may be used in duty-to-defend cases to establish fundamental coverage facts such as (1) whether the person being sued is excluded as an insured under the policy, (2) whether the property at issue in the lawsuit is excluded from coverage, and (3) whether an insurance policy exists. *See, e.g., Providence Wash. Ins. Co. v. A & A Coating, Inc.,* 30 S.W.3d 554, 556 (Tex. App.-Texarkana 2000, pet. denied); *Tri-Coastal Contractors, Inc. v. Hartford Underwriters Ins.,* 981 S.W.2d 861, 863 n. 1 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *see also Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.,* 267 F.Supp.2d 601, 621 (E.D.Tex. 2003) (providing in-depth analysis of relevant caselaw). Under this line of cases, courts do not allow evidence of the specific alleged occurrence in order to determine whether the occurrence itself is covered by the policy. *See Westport Ins. Corp.,* 267 F.Supp.2d at 620 (citing *State Farm Fire & Cas. Co. v. Wade,* 827 S.W.2d 448, 454 (Tex.App.-Corpus Christi 1992, writ denied) (Dorsey, J., concurring [5])).

Here, Pine Oak offered extrinsic evidence that the faulty construction work was performed by subcontractors and,

---

**5.** Although the "concurring opinion" in *Wade* is styled as a concurrence, it was joined by two of the three judges on the panel. 827 S.W.2d at 449, 453–55 (Dorsey, J., concurring; Hinojosa, J., joining).

thus, was potentially covered under the CGL policies. Because this evidence speaks to the specific alleged occurrence, it does not fall within the parameters of this first category of extrinsic evidence cases.

The second category of extrinsic evidence consideration is found in only a few cases. These cases hold that a court may examine extrinsic evidence "[w]hen the petition in the underlying lawsuit does not allege facts sufficient for a determination of whether those facts, even if true, are covered by the policy." *Wade,* 827 S.W.2d at 452 (citing *Gonzales v. Am. States Ins. Co.,* 628 S.W.2d 184, 186 (Tex.App.-Corpus Christi 1982, no writ)); *see also Urethane Int'l Prods. v. Mid–Continent Cas. Co.,* 187 S.W.3d 172, 176 (Tex.App.-Waco 2006, no pet.) (citing *Wade* and *Gonzales* ). Although the Texas Supreme Court has not specifically addressed the propriety of this much more permissive rule, it is clearly the minority position and has been strongly criticized. *See, e.g., Northfield Ins. Co. v. Loving Home Care, Inc.,* 363 F.3d 523, 529–31 (5th Cir.2004) (making "best *Erie* guess" that current Texas Supreme Court would not recognize *any* exception to the strict eight-corners rule); *Westport Ins. Corp.,* 267 F.Supp.2d at 616–622 (concluding that the permissive extrinsic evidence rule is in the minority and increasingly disfavored).

We recognize that the refusal to consider extrinsic evidence will inevitably result in some inequitable outcomes.[6] Nonetheless, two factors stand at the forefront of our decision and trump any equitable considerations: (1) the Texas Supreme Court has only applied the eight-corners analysis

in duty to defend cases and has resisted all opportunities to adopt a permissive extrinsic evidence stance in such cases, and (2) the clear majority of courts of appeals that have addressed the issue, including most of the recent opinions, have rejected the permissive rule. Because there is a clear trend in Texas law, we decline to follow the permissive rule and instead follow the eight-corners analysis as set forth by the Texas Supreme Court. *See generally Merchs. Fast Motor Lines,* 939 S.W.2d at 141–42.

Because Pine Oak's extrinsic evidence does not fall within the first category of cases permitting extrinsic evidence and we decline to follow the more permissive line of cases, we will not consider the extrinsic evidence in analyzing the claims in the Glass lawsuit. As stated above, the Glass pleadings do not establish that appellees had a duty to defend Pine Oak in that lawsuit. Thus, the trial court correctly held that appellees were not obligated to provide a defense in the Glass lawsuit.

## C. Policy Trigger

We next consider whether each of the petitions allege damage triggering any of the CGL policies issued by appellees. In response to Pine Oak's motion for summary judgment, appellees argued that Pine Oak had failed to identify which policies were triggered in regard to each underlying lawsuit. In other words, they argued that Pine Oak had not established the date of the "occurrence" in each lawsuit that would trigger coverage under a particular policy. On appeal, they cite

---

**6.** It is interesting to note that in most of the cited cases, the extrinsic evidence in question was offered by an insurer to prove that it had no duty to defend. Situations like the present, where an insured is offering extrinsic evidence that would establish a duty to defend, will naturally be less common because

plaintiffs in underlying litigations generally have an incentive to allege facts within coverage of the defendant's insurance policy (to bring deep-pockets into the litigation). We decline to fashion a new principle of law based on which party offers the evidence.

*Dorchester Development Corp. v. Safeco Insurance Co.*, 737 S.W.2d 380 (Tex.App.-Dallas 1987, no writ), for the proposition that the time of an occurrence for purposes of triggering a liability policy is the time the complaining party was actually damaged, not the time the wrongful act was committed. They further assert that under the *Dorchester* "manifestation rule," a party sustains actual damage when the damage becomes "readily apparent" or "manifest," citing *American Home Assurance Co. v. Unitramp Ltd.*, 146 F.3d 311, 313 (5th Cir.1998). According to the *Unitramp* opinion, damage becomes "readily apparent" or "manifest" when it "is capable of being easily perceived, recognized and understood." 146 F.3d at 314.

Appellees then assert that Texas courts have consistently adopted the manifestation rule to determine the time of an occurrence. We disagree. Only two courts have adopted the manifestation rule, and the Texas Supreme Court has so far declined to adopt or reject the rule. *See Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 853 n. 20 (Tex.1994); *State Farm Mut. Auto. Ins. Co. v. Kelly*, 945 S.W.2d 905, 910 (Tex.App.-Austin 1997, writ denied); *Cullen/Frost Bank v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 257 (Tex.App.-Dallas 1993, writ denied); *Dorchester Dev.*, 737 S.W.2d at 383. In *Unitramp*, the Fifth Circuit noted that the Texas Supreme Court had not adopted the manifestation rule, but certain lower courts (citing *Kelly*, *Cullen/Frost*, and *Dorchester*) had applied it. 146 F.3d at 313. Without further analysis into the propriety of the rule, the *Unitramp* court also applied it. 146 F.3d at 313–14.

■ We hasten to note, however, that none of these cases appears to have involved policies that defined "occurrence" so as to include "continuous or repeated exposure to conditions." The CGL policies currently before us do so, as did the policies at issue in *Pilgrim Enterprises, Inc. v. Maryland Casualty Co.*, 24 S.W.3d 488, 496 (Tex.App.-Houston [1st Dist.] 2000, no pet.). In *Pilgrim*, our sister court declined to follow the *Dorchester* manifestation rule and instead followed what is called the "exposure rule." *Id.* at 497–98; *see also Millennium Petrochem., Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 343–44 (5th Cir.2004) (citing *Pilgrim* favorably).

The *Pilgrim* court explained that "[i]n an occurrence based policy, the insured is covered for 'all claims based on an event occurring during the policy period, regardless of whether the claim or occurrence is brought to the attention of the insured or made known to the insurer during the policy period.'" *Id.* at 497 (quoting *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 918 (Tex.App.-Fort Worth 1988, writ denied)). In contrast, claims-made policies, which are less expensive than occurrence-based policies, cover only injuries or damages that come to the attention of the insured and are made known to the insurer during the policy period. *Id.* (citing *Yancey*). Because the policies at issue in *Pilgrim* were occurrence-based policies, reading a claims-made requirement into the policies—that the damage must actually be discovered during the policy period for coverage to be triggered—would significantly lower the value purchased by the insured. *Id.*

More importantly, the court emphasized that the policies in question neither contained the term "manifest" nor required that damage must be identified during the coverage period; to the contrary, the policies contemplated that damage could result from "continuous or repeated exposure to conditions." *Id.* Thus, "harm caused by continuous exposure during a

policy period will be covered by that policy." *Id.*

Similarly, all of the CGL policies issued by appellees to Pine Oak omit reference to "manifestation" but contain "continuous or repeated exposure" language. Therefore, any property damage that occurred because of continuous or repeated exposure to conditions during the policy period of a policy issued by Great American or Mid–Continent is potentially covered. Accordingly, each insurer would have a duty to defend against any claim that alleges potential property damage from a continuous or repeated exposure falling within a relevant policy period.[7]

In reviewing the claims in each petition, we must liberally interpret the allegations, finding a duty to defend whenever a petition potentially states a cause of action within the policy coverage. *Merchs. Fast Motor Lines,* 939 S.W.2d at 141; *see also Pilgrim Enters.,* 24 S.W.3d at 498. We further bear in mind that the Great American policies covered the period from April 5, 1993, to April 5, 2001, whereas the Mid–Continent policies covered from April 5, 2001, to April 5, 2003.

In the Sorrell lawsuit, the plaintiffs alleged that Pine Oak built the home in 1996 or 1997 and the plaintiffs purchased it in 1999, that each new rainfall has caused new, independent damage, and that the accumulation of moisture has continuously caused damage. In the Fourrier lawsuit, the plaintiffs alleged that Pine Oak built the home in 1997, that each new rainfall has caused new, independent damage, and that the accumulation of moisture has continuously caused damage. In the Vint lawsuit, the plaintiffs alleged that Pine Oak built the home in 1997 and the plaintiffs

bought it in 2000, that each new rainfall has caused new, independent damage, and that the accumulation of moisture has continuously caused damage. Thus, each of these three lawsuits clearly states a cause of action potentially within the coverage of both Great American and Mid–Continent policies.

In the Barkley lawsuit, the plaintiff alleged that Pine Oak built the home in 1996 and that the EIFS failed and caused damage by permitting water infiltration and entrapment. The petition also states a number of other allegations, including that Pine Oak failed to properly install sprinkler heads and flashing and failed to provide adequate drainage, ventilation, and caulking. The appellees point out, however, that the petition does not state a specific time period in which the EIFS failed or when any of the alleged defects caused damages; the petition also does not allege that damage occurred with each new rainfall or that the accumulation of moisture continuously caused damage. We will not read facts into a petition to create a duty to defend. *See King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 187 (Tex.2002). If the petition itself does not contain sufficient facts to establish that the policy has been triggered, there is no duty to defend. *Id.* While the appellees are correct that the Barkley petition does not allege a specific date on which damage occurred, it can readily be ascertained from the petition that the alleged damage occurred in 1996 (the year of construction) or later. *See Westfield Ins. Co. v. Kroiss,* 694 N.W.2d 102, 106–07 (Minn.Ct.App. 2005) (holding that where plaintiffs in underlying petitions did not allege specific time periods in which water infiltrated

7. The proper inquiry is when the property damage occurred, not when the defective construction occurred. The CGL policies cover property damage occurring during the policy period; they do not cover the cost to repair, replace, or remediate the defective construction itself. *See Lennar,* 2006 WL 406609, at *15.

their homes and caused damage, the petitions still alleged damage that potentially occurred during the policy periods). Accordingly, the petition states a cause of action potentially within the coverage of each of the post–1995 Great American policies as well as the two Mid–Continent policies. *See Merchs. Fast Motor Lines*, 939 S.W.2d at 141; *Pilgrim Enters.*, 24 S.W.3d at 498.

In conclusion, we find that the pleadings in Sorrell, Fourrier, Vint, and Barkley allege damages occurring in policy periods covered by both Great American and Mid–Continent. Thus the trial court erred if it granted summary judgment on the ground that the duty to defend provisions in the policies were not triggered by the claims in these underlying lawsuits.[8]

### D. EIFS Exclusion

In their motion for summary judgment, appellees additionally argued that specific exclusions in certain of the CGL policies for property damage arising out of the EIFS "hazard" preclude coverage of the damages in the underlying cases. These policies include the Great American policy effective beginning in April 2000 and the Mid–Continent policies effective beginning in April 2001 and April 2002 (the only two years Mid–Continent insured Pine Oak).

8. We do not address the trigger issue with respect to the Glass lawsuit because we held above that the appellees had no duty to defend in Glass because the Glass pleadings did not raise claims falling within the subcontractor exception to the "your work" exclusion.

9. It is important to note that Pine Oak does not argue that the EIFS exclusion would not exclude coverage if valid and if a particular lawsuit does not allege damages other than from EIFS. Accordingly, we assume, in support of the trial court's judgment, that a valid EIFS exclusion bars coverage of any underlying lawsuit that raises only EIFS-related claims.

Pine Oak does not dispute that the Mid–Continent endorsements were valid but does dispute whether the Great American endorsement was valid. Pine Oak additionally argues that regardless of the validity of the EIFS endorsements, it is still entitled to coverage from both appellees because the underlying lawsuits allege damage unrelated to EIFS.[9]

### 1. Validity of the Great American Endorsement

Pine Oak asserts that Great American's EIFS endorsement is invalid because Great American failed to obtain preapproval of the exclusion from the Texas Commissioner of Insurance, as required by Insurance Code article 5.13–2. TEX. INS.CODE ANN. art. 5.13–2, § 8 (Vernon Supp.2005). A form used without such approval is void. *Commercial Union Assurance Co. v. Preston*, 115 Tex. 351, 282 S.W. 563, 565 (1926); *see also Urrutia v. Decker*, 992 S.W.2d 440, 443–44 (Tex.1999) (discussing *Commercial Union* ). Appellees argue that Great American's EIFS exclusion was entered on an approved form because the commissioner approved a form that permitted exclusion of "Designated Work" from coverage and contained a blank for the "Description of your work." [10] In the blank on the form includ-

10. In support of its contention that the "designated work" form was approved by the commissioner, appellees attached an email purportedly from the Texas Department of Insurance in which it is stated that the form "CG 21 34 01 87" had been approved. The language in "CG 21 34 01 87" (a copy of which was also included in the summary judgment proof) is identical to the language in the form used by Great American. Pine Oak makes no arguments respecting the nature of this evidence and does not argue that the commissioner did not approve the "Designated Work" form.

ed in the Great American CGL policies, it is written "See CG8802." The next page of each of the policies is a document marked as "CG 88 02 (Ed. 11 85)." This document contains substantially similar language to that contained in the Mid–Continent EIFS exclusion.

■ We agree with appellees. The commissioner approved the "Designated Work" form, which contained a blank for filling in the work that was to be excluded from coverage. The Great American CGL policies have this blank completed by reference to an attached document. That document details the EIFS-related work that was to be excluded from coverage. Because the commissioner approved the form with a blank for designated work, it follows that he approved the use of such a form. Furthermore, the approved version of the "Designated Work" form states in parentheses after the blank for "Description of your work" that "[i]f no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement." Thus, the form itself authorizes the description of the work to be excluded to be on a separate page. As long as the item entered, or referenced, in the blank constitutes "designated work" and not something else, the exclusion is valid. The document referenced in the "Designated Work" endorsements, "CG 88 02 (Ed. 11 85)," is headed "description of your work" and contains a description of work conducted in regard to EIFS, including "design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair . . . of an Exterior Insulation and Finish System." Accordingly, the trial court did not err if it found that the Great American exclusion was valid so as to exclude coverage for EIFS-related claims.

## 2. Non–EIFS Related Damage

■ Regarding Mid–Continent, the EIFS exclusion would bar coverage of any underlying claims relating to EIFS. Regarding Great American, its CGL policies only included EIFS exclusions in the final two years of coverage, 1999–2001; thus, these exclusions would only bar damages occurring after April 1999. To the extent any of the underlying lawsuits include claims unrelated to EIFS for damages occurring during relevant policy years, the insurers could still be required to provide a defense in those actions. *See Merchs. Fast Motor Lines,* 939 S.W.2d at 141 (stating that an insurer will generally be required to defend a lawsuit if the underlying petition potentially states a cause of action within the policy coverage). Thus, we must undertake a case-by-case, pleading-by-pleading analysis to determine if any non-EIFS claims are raised.

The Mid–Continent EIFS exclusion reads as follows:

Unless so indicated below, the "Exterior Insulation and Finish System Hazard" is included within the Limit of Insurance.

A.   If so indicated, the "Exterior Insulation and Finish System Hazard" is limited to:
$ _____ Aggregate
$ _____ Deductible Per Claim

X   B.   If so indicated, this insurance does not apply to "Property Damage" arising out of the "Exterior Insulation and Finish System Hazard."

*Definition*

1.   "Exterior Insulation and Finish System Hazard" means the design, manufacture, construction, fabrication, preparation, installation, application, maintenance, or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the applica-

tion or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system when performed by you or;

Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system hazard" is used on any part of that structure when performed by you or on your behalf.

As discussed above, the Great American EIFS exclusion was contained in a general "your work" exclusion. The attached description of "your work" reads as follows:

Description of your work:

1. The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling service, correction, or replacement, of an "Exterior Insulation and Finish System" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system.

2. Any work or operations with respect to any exterior component, fixture or feature of any structure if an "Exterior Insulation and Finish System" is used on any part of that structure.

This exclusion applies to "your work" described in paragraph 1 or paragraph 2 above performed by you or on your behalf.

. . . .

This insurance does not apply to "bodily injury" and "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the schedule.

The EIFS exclusions contained in the policies broadly exclude coverage for property damage directly related to EIFS. Each also excludes coverage for damage resulting from work performed on any "exterior component, fixture, or feature" of a structure if EIFS is installed on any part of that structure.[11]

In regard to the Sorrells' claims, Pine Oak points only to the following language from the pleadings as constituting a claim of non-EIFS-related damage: "Defendant Pine Oak failed to properly construct the Residence in a manner that would protect it from damage." Out of context, this sentence appears ambiguous enough to include non-EIFS damage. However, viewed in context, it is clear that the statement refers to the application and installation of EIFS on the Sorrells' home. The remainder of the Sorrells' petition, as it relates to Pine Oak, alleges only damages and conduct relating to EIFS and does not make any claims against Pine Oak unrelated to the use and installation of EIFS on the home. Accordingly, the EIFS exclusion in the CGL policies bars coverage of any claims based on the Sorrell lawsuit during relevant policy periods.

■■■ In their pleadings, the Fourriers primarily raise EIFS-related causes of action and damages; however, they also claim that an inadequately-sized chimney cap was installed, insufficient grade clearance was created at the base of certain columns on the house, and no expansion joint was installed on the second level floor

---

11. The exclusions appear designed to exclude from coverage anything that could possibly leak or otherwise permit moisture to enter a structure when that structure has EIFS installed on it. However, application of the exclusions is not specifically limited to leak or moisture-intrusion-related damages.

line. The first of these complaints, the chimney cap, clearly falls within the "exterior component, fixture, or feature" portion of the EIFS exclusions, assuming it is not part of the EIFS itself. The other two complaints, regarding the grade clearance and expansion joint, do not appear to be covered by any portion of the EIFS exclusion. However, the Fourriers do not allege that any property damage resulted from these two problems. A CGL policy covers only property damage to tangible property and not the cost to repair, replace, or remediate the defective construction itself. *Lennar*, 2006 WL 406609, at *15. In the damages section of the petition, the Fourriers claim only EIFS-related property damages. Although they additionally request "damages" for and remediation of the grade clearance problem and the missing expansion joint, such is not compensable under the CGL policies. *See id.* Accordingly, we find that the Fourriers' claims are excluded by the EIFS exclusions when those exclusions were in effect.

The only non-EIFS related problem identified by Pine Oak in the Vint lawsuit is the claim that the roof is sagging due to improper roof installation, including specifically the installation of collar ties and struts. The roof itself clearly falls within the "exterior component, fixture, or feature" portion of the EIFS exclusions. Further, the collar ties and struts are but components of the roof itself; thus, each also falls within the "exterior component, fixture, or feature" portion of the EIFS exclusions. *See generally* 22 Tex. Admin. Code § 535.228 (Tex. Real Estate Comm'n, Standards of Practice) (describing collar

ties and struts as roof components). More to the point, work performed on a roof component would constitute work or operations with respect to an "exterior component, fixture or feature." Accordingly, we find that the Vints' claims are excluded by the EIFS exclusions for the policies in which such exclusions occur.

The only non-EIFS related problems identified by Pine Oak in the Barkley case involve a failure to properly caulk windows, provide adequate crawl space, and properly install sprinkler heads. Like the claims in the Fourrier lawsuit, however, none of the non-EIFS Barkley allegations assert property damage covered by the CGL policies. Each is a construction defect in itself; there is no claim that these items caused other damage. It could be surmised that a failure to properly caulk windows may have contributed to the water infiltration problems alleged by Barkley, but this allegation is also clearly covered by the "exterior component, fixture, or feature" portion of the EIFS exclusions. The other items—inadequate crawl space and sprinkler head installation—are not tied to any resulting property damage in the petition. Accordingly, they are not covered by the CGL policies. *See Lennar*, 2006 WL 406609, at *15.[12]

In conclusion, we find that none of the pleadings in Sorrell, Fourrier, Vint, and Barkley allege damages not excluded from coverage by the EIFS exclusions. Accordingly, as a matter of law, Mid–Continent does not have a duty to defend in any of these lawsuits. Great American, however, still has a duty to defend because the damages alleged in those cases triggered policies in force prior to the addition of the EIFS exclusion.[13] Based on the foregoing

---

12. It should further be noted that Pine Oak makes no representations regarding the cross-actions filed against it by its co-defendants in the Barkley lawsuit. These cross-claims allege only faulty construction of exterior com-

ponents, fixtures, or features or the EIFS itself. Thus, these claims would also be barred from coverage.

13. Again, we do not address this issue with respect to the Glass case because we held

analysis, we sustain in part and overrule in part each of Pine Oak's first three issues.

### III.  Insurance Code Article 21.55

In its fourth issue, Pine Oak contends that the trial court erred in granting summary judgment favoring appellees on Pine Oak's claims under former article 21.55 of the Texas Insurance Code.  TEX. INS. CODE ANN. art. 21.55 (repealed 2005) (current version at TEX. INS.CODE ANN. § 542.051–.061 (Vernon Supp.2005)). Pine Oak pleaded that it was entitled to damages under the article for appellees' failure to promptly provide a defense or pay defense costs in the underlying lawsuits.  In their motion for summary judgment, appellees argued that they cannot be found liable under article 21.55 because it does not apply to the payment of attorney's fees under a duty to defend.

Article 21.55 imposes certain requirements on an insurer to respond to claims and to promptly pay accepted claims; it also imposes penalties for non-compliance. TEX. INS.CODE ANN. art. 21.55, §§ 2–4, 6.  The article defines "claim" as "a first party claim made by an insured or a policyholder under an insurance policy ... that must be paid by the insurer directly to the insured." *Id.* § 1(3).  The question of whether defense costs under an insurer's duty to defend constitute a "first party claim" covered by article 21.55 or "third party claims" not covered by article 21.55 has caused significant recent disagreement among Texas courts.  Several courts of appeals have held that an insured's claim for defense costs was not a first party claim under the policy in question but was a breach of contract claim for failing to provide a defense; thus, the claim did not

above that the Glass pleadings did not raise claims falling within the subcontractor exception to the "your work" exclusion.

trigger penalties under 21.55, which applies only to claims under the policy.  *See Ulico Cas. Co. v. Allied Pilots Ass'n,* 187 S.W.3d 91, 104–08 (Tex.App.-Fort Worth 2005, pet. filed); *Serv. Lloyd's Ins. Co. v. J.C. Wink, Inc.,* 182 S.W.3d 19, 30–33 (Tex. App.-San Antonio 2005, pet. filed); *TIG Ins. Co. v. Dallas Basketball, Ltd.,* 129 S.W.3d 232, 239–40 (Tex.App.-Dallas 2004, pet. denied).

On the other hand, the federal district courts in Texas have been unanimous in holding that a failure to promptly pay defense costs can trigger article 21.55 penalties.  *See, e.g., Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.,* 267 F.Supp.2d 601, 632 n. 19 (E.D.Tex. 2003); *Luxury Living, Inc. v. Mid–Continent Cas. Co.,* No. Civ. A. H–02–3166, 2003 WL 22116202, at *20 (S.D.Tex. Sept.10, 2003) (not designated for publication); *E & R Rubalcava Constr., Inc. v. Burlington Ins. Co.,* 148 F.Supp.2d 746, 750 (N.D.Tex. 2001); *Ryland Group, Inc. v. Travelers Indem. Co.,* No. Civ. A–00–CA–233 JRN, 2000 WL 33544086, at *11–12 (W.D.Tex. 2000) (not designated for publication). The Corpus Christi Court of Appeals affirmed an award of article 21.55 damages to an insured for the insurer's failure to promptly provide a defense or pay defense costs, but it did so without addressing whether they were first or third party claims.  *N. County Mut. Ins. Co. v. Davalos,* 84 S.W.3d 314, 318–19 (Tex.App.-Corpus Christi 2002), *rev'd on other grounds,* 140 S.W.3d 685 (Tex.2004) (holding that the insurer did not fail to timely provide a defense and thus declining to decide whether an insurer's failure to promptly pay defense costs could entitle an insured to article 21.55 penalties).[14]

14. It should also be noted that this issue is the basis for one of the certified questions from the Fifth Circuit to the Texas Supreme Court

■ We agree with our sister courts who have held that a demand for a defense under a liability policy is not a first party claim under such policy. As the court in *TIG* explained, the structure of article 21.55 presumes a tangible loss has been suffered by the insured for which it seeks payment from its insurer. 129 S.W.3d at 239–40. Attempting to apply the statute to a claim for a defense is unworkable and goes against the legislative intent. *Id.* at 239. When an insurer refuses to provide a defense, the insured's claim for reimbursement is not a claim under the insurance policy but is a common law claim for breach of the policy; thus, article 21.55 does not apply. *Id.* at 239–40. Based on the analysis in *TIG*, we conclude that article 21.55 is inapplicable to Pine Oak's claim that appellees failed to promptly provide for a defense or pay defense costs. Accordingly, Pine Oak is not entitled to damages, attorney's fees, or penalties under article 21.55. We overrule Pine Oak's fourth issue.

## IV. Indemnification Claims

In its fifth issue, Pine Oak contends that the trial court erred in granting summary judgment on appellees' duty to indemnify Pine Oak in the underlying lawsuits. In their motion for summary judgment, appellees argued that they have no duty to indemnify Pine Oak for the same reasons they have no duty to defend. Pine Oak responded that appellees' duty to indemnify is not justiciable until after resolution of the liability issues in the underlying lawsuits.

■ We begin by acknowledging that the duty to defend and the duty to indemnify are separate and distinct duties that an insurer owes to its insured. *Trinity Universal Ins. Co. v. Cowan*, 945

S.W.2d 819, 821–22 (Tex.1997). As discussed in detail above, the duty to defend is determined from a review of the policy and the factual allegations in the underlying pleadings. *See id.* at 821. Conversely, the duty to indemnify depends on whether the actual facts in the case establish liability covered under the policy. *Id.* Thus, generally, the duty to defend can be determined prior to resolution of the underlying lawsuit, while the duty to indemnify may not be justiciable until the question of the insured's liability has been resolved. *See Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82–83 (Tex.1997). For example, a pleading alleging that the insured engaged in both negligent and intentional conduct might trigger an insurer's duty to defend under a particular policy, whereas an ultimate finding that the insured acted only intentionally might negate any duty to indemnify. *Id.* at 82. In contrast, a duty to indemnify may be determinable prior to resolution of the underlying liability issues when the same reasons that negate a duty to defend would likewise negate any possibility that the insurer would ever have a duty to indemnify in the underlying cases. *Id.* at 84.

The insurance policy at issue in *Griffin* covered negligent acts of the insured that resulted in an "auto accident," but expressly excluded coverage for intentional acts. *Id.* at 82. Although the plaintiff in the underlying lawsuit pleaded legal theories of negligence and gross negligence, he alleged facts (*i.e.*, a drive-by shooting) indicating that the origin of his damages was solely intentional behavior. *Id.* at 82–83. The supreme court concluded that because no facts possibly could be developed at trial that would convert a drive-by shooting into an auto accident, the insurer could never be required to indemnify the insured regarding the underlying lawsuit. *Id.* at

in *Lamar Homes, Inc. v. Mid–Continent Casu-*   *alty Co.*, 428 F.3d 193 (5th Cir.2005).

84. Accordingly, the court rendered a declaratory judgment for the insurer on the indemnification issue.

We held above that Mid–Continent had no duty to defend in the Sorrell, Fourrier, Vint, and Barkley lawsuits because none of the pleadings in those cases alleged any non-EIFS related damages; thus, the EIFS exclusion in the Mid–Continent CGL policies barred coverage of the alleged facts. As in *Griffin*, the same reasons that negate Mid–Continent's duty to defend in the underlying lawsuits likewise negate any possibility that it would ever have a duty to indemnify in the lawsuits. The plaintiffs in the underlying cases allege only damages caused by EIFS-related problems, and the EIFS exclusions negate coverage for these claims. Consequently, the trial court did not err in holding that Mid–Continent had no duty to indemnify Pine Oak in these lawsuits.

Regarding Great American and the Sorrell, Fourrier, Vint, and Barkley lawsuits, we held above that Great American had a duty to defend in those cases because damage allegedly occurred during policy periods in which no EIFS exclusion was in force. Consequently, the *Griffin* rule cannot apply in regard to Great American's duty to indemnify in those lawsuits. Thus, the trial court erred in holding that Great American had no duty to indemnify in those lawsuits.

Regarding the Glass lawsuit, we held above that neither Mid–Continent nor Great American had a duty to defend because the Glass pleadings did not raise the possibility that subcontractors were used in constructing the home. We recently noted that "if the underlying petition does not raise factual allegations sufficient to invoke the duty to defend, then even proof of all of those allegations could not invoke the insurer's duty to indemnify." *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.,*
No.14–05–00486–CV, 2006 WL 1766120, at *5 (Tex.App.-Houston [14th Dist.] June 29, 2006, no pet. h.) (mem.op.) (citing *Reser v. State Farm Fire & Cas. Co.*, 981 S.W.2d 260, 263 (Tex.App.-San Antonio 1998, no pet.)). In *D.R. Horton*, we went on to hold that because the pleadings in the underlying lawsuit did not allege facts covered by the policy, proof of those facts would not trigger coverage. Accordingly, we hold that because the pleadings in the underlying Glass lawsuit do not allege facts covered by the Mid–Continent or Great American policies, there can be no duty to indemnify in the Glass lawsuit. The trial court therefore did not err in holding as a matter of law that Mid–Continent and Great American had no duty to indemnify Pine Oak in the Glass lawsuit.

The trial court correctly held that Mid–Continent had no duty to indemnify Pine Oak in any of the underlying lawsuits and that Great American had no duty to indemnify Pine Oak in the Glass lawsuit. The court erred, however, in holding that Great American had no duty to indemnify in the Sorrell, Fourrier, Vint, and Barkley lawsuits. Accordingly, we sustain Pine Oak's fifth issue in part and overrule it in part.

## V. Pine Oak's Damages

■ Pine Oak has also asserted, in its appellate brief and in the trial court, that it should be awarded the attorney's fees that it has already expended in defending the underlying litigations as well as the additional fees that it expects to incur in the future in defending the litigations. Pine Oak has offered no authority for this request in either the trial court or on appeal. Generally, in the declaratory judgment context, when a court determines that an insurer has a duty to defend in an underlying litigation, the court issues a declaratory judgment so stating. *See*

*English v. BGP Int'l, Inc.,* 174 S.W.3d 366, 375 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *Serv. Lloyd's Ins. Co. v. J.C. Wink, Inc.,* 182 S.W.3d 19, 33 (Tex.App.-San Antonio 2005, pet. filed); *Tucker v. Allstate Tex. Lloyds Ins. Co.,* 180 S.W.3d 880, 889 (Tex.App.-Texarkana 2005, no pet.); *Fielder Road Baptist Church v. Guideone Elite Ins. Co.,* 139 S.W.3d 384, 391 (Tex.App.-Fort Worth 2004, pet. granted). We have found no authority supporting a prospective award of attorney's fees in such a situation. Pine Oak offers no authority or argument to suggest otherwise.

## VI. Disposition

We hold that as a matter of law, Mid–Continent does not have a duty to defend Pine Oak in any of the underlying lawsuits: Sorrell, Fourrier, Glass, Vint, or Barkley. Further, as a matter of law, Great American does not have a duty to defend in the Glass lawsuit. Accordingly, we affirm the trial court's summary judgment in regard to Mid–Continent's duty to defend in each of the underlying litigations, and we affirm the summary judgment in regard to Great American's duty to defend in the Glass lawsuit.

We additionally hold that Great American has a duty to defend in the Sorrell, Fourrier, Vint, and Barkley lawsuits. Thus, the trial court erred in rendering judgment that Great American did not have a duty as a matter of law to defend in these lawsuits, and we reverse the court's judgment in this regard. Based on these holdings, we sustain in part and overrule in part each of Pine Oak's first three issues.

We further hold that Pine Oak is not entitled to recover under former article 21.55 of the Insurance Code; thus, the trial court did not err in granting summary judgment against these claims. Accordingly, we overrule Pine Oak's fourth issue.

We further hold that the trial court correctly held that Mid–Continent has no duty to indemnify Pine Oak in any of the underlying lawsuits and that Great American has no duty to indemnify Pine Oak in the Glass lawsuit; thus, we overrule Pine Oak's fifth issue in part and affirm summary judgment in this regard. However, the trial court erred in holding that Great American has no duty to indemnify in the Sorrell, Fourrier, Vint, and Barkley lawsuits, so we sustain Pine Oak's fifth issue in part and reverse the court's judgment in this regard.

In summary, we affirm the trial court's summary judgment on all of Pine Oak's claims against Mid–Continent. We also affirm the trial court's summary judgment on all of Pine Oak's claims against Great American relating to the Glass lawsuit and on Pine Oak's article 21.55 claims against Great American. We reverse the summary judgment on the remaining claims discussed in this opinion—those alleging that Great American has a duty to defend and a duty to indemnify in the Sorrell, Fourrier, Vint, and Barkley lawsuits. Accordingly, we sever these claims and remand for further proceedings in accordance with this opinion.[15]

---

15. Both Pine Oak and appellees request—in the event we reverse the summary judgment regarding indemnity—that we reverse and re-mand the case to the trial court. We may reverse and remand whenever the interests of judgment so dictate. TEX. R. APP. P. 43.3;

*Lidawi v. Progressive County Mut. Ins. Co.,* 112 S.W.3d 725, 730 (Tex.App.-Houston [14th Dist.] 2003, no pet.).