Affirmed in Part and Reversed and Remanded, and Opinion filed July 31,
2007








Affirmed
in Part and Reversed and Remanded, and Opinion filed July 31, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00075-CV

____________

 

WILLIAMS CONSOLIDATED I, LTD. / BSI
HOLDINGS, INC., D/B/A WILLIAMS INSULATION COMPANY OF HOUSTON, INC., Appellant

 

V.

 

TIG INSURANCE COMPANY, Appellee

 



 

On Appeal from the 113th
District Court

Harris County, Texas

Trial Court Cause No. 04-26752

 



 

O P I N I O N








This case arises out of an insurance-coverage dispute under
a commercial general liability policy.  The insurer and the insured filed cross-motions
for summary judgment as to the insurer=s duty to defend
and indemnify the insured against claims of a third party seeking to recover
for damages allegedly suffered as a result of work performed by the insured. 
The trial court granted the insurer=s motion for
summary judgment and denied the insured=s motion for
summary judgment.  We conclude that the trial court erred in granting the
insurer=s motion and in
denying the insured=s motion as to the duty-to-defend issue,
but did not err in denying the remainder of the insured=s motion. 

                        I.  Factual and Procedural Background

Appellant/plaintiff  Williams Consolidated I, Ltd. / BSI
Holdings, Inc., d/b/a Williams Insulation Company of Houston, Inc. (hereinafter
AWilliams@) obtained general
commercial liability insurance from appellee/defendant TIG Insurance Company
(hereinafter ATIG@) in connection with work performed in Williams=s business.  TIG
issued a commercial general liability policy that had a coverage period
beginning on August 1, 1999 and ending on May 1, 2001 (hereinafter ACGL Policy@).  Subsequently,
on June 5, 2002, Mark and Carol Mokry filed suit against Williams asserting
claims related to its performance of work as a subcontractor on the 1991
construction of their home.  

The Mokrys, who also sued the home builder, alleged, among
other things, that during the construction of their home, the vapor barrier was
wrongly installed on the interior face of the exterior wood-framed wall.  They
claimed that this improper installation caused moisture to condense on and
within the cavity, leading to the growth of mold and mildew.  The Mokrys
alleged that the design, construction, and installation of the vapor barrier
was not in accordance with the plans and specifications and was not performed
in a good and workmanlike manner.  As a result, the Mokrys asserted, mold grew
in their home.  They became aware of mold in 2000, and on September 8, 2000,
the Mokry family moved out of their home because of health concerns relating to
the presence of mold.  The Mokrys claimed that the mold contamination caused
them illness and forced them to leave the dwelling.  They also sought damages
for alleged losses resulting from the destruction of certain possessions and
the remediation of their home.








Williams requested that TIG provide a defense and
indemnification relative to the Mokrys= claims.  TIG
denied that it had a duty to defend Williams or to indemnify Williams.  TIG
based this denial on the APrior Incident(s) and Prior Construction
Defects Exclusion@ in the CGL Policy (hereinafter the AExclusion@).  Williams then
filed suit, contending the following in its live pleading:

!       TIG issued the CGL Policy in Texas.

!       On June 4, 2003, TIG denied Williams=s demand for defense and indemnity
as to the Mokrys= claims.

!       The Mokrys= claims have been settled, and Williams was forced to pay
$47,500 of its own money to settle the claims, as a result of TIG=s refusal to provide indemnity.  

!       Williams seeks a declaratory judgment that
(1) TIG had a duty under the CGL Policy to defend Williams as to the Mokrys= claims and (2) TIG has a duty to
indemnify Williams as to the Mokrys= claims.

!       Williams seeks $47,500 in damages for breach
of the CGL Policy.

!       Williams
seeks its reasonable attorney=s fees under Chapter 37, or in the
alternative, Chapter 38 of the Texas Civil Practice and Remedies Code.[1]

Williams moved for summary judgment, contending, among
other things, the following:

!       As a matter of law, TIG breached its duty to
defend Williams against the Mokrys= claims.

!       TIG breached its duty to indemnify Williams
against the Mokrys= claims causing Williams $47,500 in
damages.

!       TIG cannot dispute coverage based on the
Exclusion because TIG has not received the necessary permission from the Texas
Department of Insurance to use the Exclusion, as required by former article
5.13-2, section 8 of the Texas Insurance Code.

!       As a matter
of law, TIG must pay Williams=s reasonable and necessary attorney=s fees under
Chapter 37 or Chapter 38.








TIG also moved for summary judgment, contending, among
other things, the following:

!       Based on the Exclusion, TIG does not have a
duty to indemnify Williams against the Mokrys= claims as a matter of law.  

!       Williams has offered no evidence that the
alleged damaging process did not begin at the Mokry residence before the CGL
Policy first took effect.

!       As a matter of law, TIG does not have a duty
to indemnify Williams against the Mokrys= claims because of uncontroverted evidence that mold formed
in the Mokrys= home within two years after the
Mokrys= 1991 move-in.

!       Because the CGL Policy was not delivered or
issued for delivery in Texas, TIG was not required to obtain permission from
the Texas Department of Insurance to use the Exclusion.

!       TIG is not
liable to pay Williams=s reasonable and necessary attorney=s fees under
Chapter 37 or Chapter 38 because it owes no duty to indemnify.

The trial court granted TIG=s motion for
summary judgment without specifying the grounds and denied Williams=s motion.  
Challenging the trial court=s rulings, Williams asserts the following
issues on appeal:

!       As a matter of law, TIG breached its duty to
defend Williams against the Mokrys= claims, and even though Williams=s defense costs were paid by
another insurer, this issue is not moot because it is relevant to whether
Williams is entitled to attorney=s fees under Chapter 37.

!       As a matter of law, TIG breached its duty to
indemnify Williams against the Mokrys= claims causing Williams $47,500 in damages.

!       The Exclusion is invalid because TIG has not
received the necessary permission from the Texas Department of Insurance to use
the Exclusion, as required by former article 5.13-2, section 8 of the Texas
Insurance Code.








!       Even if the Exclusion were valid and did
apply, the proper inquiry under that Exclusion would not be when mold first
formed in the Mokrys= home but rather when Aproperty damage@ first occurred or began.  Because
TIG produced no such evidence, the trial court erred in granting its motion for
summary judgment.

!       As a matter of law, TIG must pay Williams=s reasonable and necessary attorney=s fees under Chapter 37 or Chapter
38.

 

                                        II.  Standards of Review

In reviewing a traditional motion for summary judgment, we
take as true all evidence favorable to the nonmovant, and we make all
reasonable inferences in the nonmovant=s favor.  Dolcefino
v. Randolph, 19 S.W.3d 906, 916 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied).  If the movant=s motion and
summary-judgment evidence facially establish its right to judgment as a matter
of law, the burden shifts to the nonmovant to raise a genuine, material fact
issue sufficient to defeat summary judgment.  Id.  When, as in this
case, the order granting summary judgment does not specify the grounds upon
which the trial court relied, we must affirm the summary judgment if any of the
independent summary-judgment grounds is meritorious.  FM Props. Operating
Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).  








We may review the trial court=s denial of
Williams=s motion because
in it Williams sought a final summary judgment.  See CU Lloyd=s of Texas v.
Feldman, 977 S.W.2d 568, 569 (Tex. 1998).  A movant seeking a traditional
summary judgment must establish its right to that relief by conclusively
proving all elements of the movant=s claim or defense
as a matter of law.  See Tex. R.
Civ. P. 166a(c); Havlen v. McDougall, 22 S.W.3d 343, 345 (Tex.
2000).  When both parties move for summary judgment, each party must carry its
own burden, and neither can prevail because of the failure of the other to
discharge its burden.  INAC Corp. v. Underwriters at Lloyd=s, 56 S.W.3d 242,
247 (Tex. App.CHouston [14th Dist.] 2001, no pet.).  Because each
party was a movant, the burden for each was the same: to establish entitlement
to a summary judgment by conclusively proving all the elements of the claim or
defense as a matter of law.  Id.  In reviewing the trial court=s rulings on these
cross-motions, we must consider all summary-judgment evidence, determine all
issues presented, and render the judgment that the trial court should have
rendered.  FM Props. Operating Co., 22 S.W.3d at 872.  

                                                    III.  Analysis

A.      Is the duty-to-defend issue moot?

TIG asserts the duty-to-defend issue is moot because the
Mokrys= claims against 
Williams have been settled and another insurer has paid for Williams=s defense.  While
acknowledging these facts, Williams nonetheless argues that the issue of TIG=s duty to defend
is not moot because Williams seeks Chapter 37 attorney=s fees. 








The Texas Supreme Court addressed this issue in Allstate
Insurance Co. v. Hallman, in a somewhat different context, but its
reasoning in that case dictates the answer to the mootness question in this
case.  See 159 S.W.3d 640 (Tex. 2005).  In Hallman, an insurer
asserted a declaratory-judgment action against its insured, seeking a
declaration that it owed no duty to defend or indemnify the insured against a
lawsuit involving third-party claims.  See id. at 641.  The insured
counterclaimed, seeking a declaratory judgment that the insurer did have a duty
to defend and indemnify, and both parties sought attorney=s fees.  See id. 
The third-party lawsuit subsequently concluded with a jury verdict that the insured
had no liability.  See id.  Furthermore, the insurer had provided a
defense to the insured under reservation of rights, and the insurer did not
intend to seek reimbursement for the costs of this defense.  See id.  On
appeal, the Texas Supreme Court held that the issues regarding the insurer=s duty to defend
and indemnify were not moot because the insured continued to seek attorney=s fees under
Chapter 37 and continued to appeal the trial court=s denial of these
fees after the trial court concluded the insurer had no duty to defend or
indemnify as a matter of law.  See id. at 642B43.  The Texas
Supreme Court held that these issues regarding the insurer=s duty to defend
or indemnify would determine whether the Texas Supreme Court would affirm the
trial court=s denial of attorney=s fees or would
reverse the trial court=s judgment and remand for reconsideration
of the attorney=s fees issue in light of the different
determination of the defense and indemnity issues on appeal.  See id. 
Therefore, the Hallman court held that the appeal was not moot.  See
id.  Accordingly, in the case under review, the duty-to-defend issue is not
moot because Williams is appealing the trial court=s denial of its
request for Chapter 37 attorney=s fees.  See id.  

B.      What is the plain meaning of the Exclusion?        

To adjudicate the defense and indemnity
issues, this court must determine the meaning of the Exclusion, which states:

No insurance coverage is provided under this policy to defend or
indemnify any insured for Abodily injury,@ Aproperty damage,@ Apersonal injury,@ or Aadvertising injury@ which has first occurred or begun prior to
the effective date of this policy, regardless of whether repeated or continued
exposure to conditions which were a cause of such for [sic] Abodily injury,@ Aproperty damage,@ Apersonal injury@ or Aadvertising injury@ occurs during the period of this policy and cause
[sic] additional, progressive or further Abodily injury,@ Aproperty damage,@ Apersonal injury,@ or Aadvertising injury@ all of which is excluded from
coverage.

This exclusion shall apply whether or not the Insured=s legal obligation to pay damages
has been established as of the inception date of this policy.

(emphasis
added).  The CGL Policy defines Aproperty damage@ in pertinent part
as A[p]hysical injury
to tangible property, including all resulting loss of use of that property.@  The CGL Policy
states that Aall such loss of use shall be deemed to occur at the
time of the physical injury that caused it.@  The CGL Policy
also defines Abodily injury@ as Abodily injury,
sickness or disease sustained by a person, including death resulting from any
of these at any time.@  








We apply the ordinary rules of contract construction to
insurance policies.  See Kelley‑Coppedge, Inc. v. Highlands Ins. Co.,
980 S.W.2d 462, 464 (Tex. 1998).  In applying these rules, our primary concern is to ascertain the
parties= intent as expressed in the language
of the policy.  See id.  In determining the intention of the parties, we
look only within the four corners of the insurance agreement to see what is
actually stated, not what was allegedly meant.  See Esquivel v. Murray
Guard, Inc., 992 S.W.2d 536, 544 (Tex. App.CHouston [14th Dist.] 1999, pet.
denied).  We must consider all of the provisions with reference to the entire
contract; no single provision will be controlling.  Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983).  If a written contract is so worded that it can be
given a definite or certain legal meaning, then it is unambiguous, and we may
not accept parol evidence as to the parties= intent.  Kelley‑Coppedge,
980 S.W.2d at 464.  Whether a contract is ambiguous is a question of law.  Id.

In their pleadings the Mokrys did not allege Apersonal injury@ or Aadvertising injury@ as defined in the
CGL Policy.  Under the unambiguous language of the Exclusion, there is no coverage
under the CGL Policy for physical injury to tangible property or for bodily
injury if the physical injury or bodily injury first occurred or began before
August 1, 1999Cthe effective date of the CGL Policy.  TIG asserts
that the Exclusion unambiguously states that there is no coverage if any
process leading to the ultimate damage claimed began before the effective
date.  TIG cites no cases supporting this interpretation of the above-cited
policy  language and, under the applicable rules of contract construction, we
can not embrace that argument.  Contrary to TIG=s assertion, the
Exclusion is not based on the beginning of the process leading to the ultimate
injury or damage; rather, the Exclusion is based on the beginning of the actual
injury or damage.  








Williams asserts that the Exclusion does not apply to the
alleged property damage or bodily injury in question unless, before the
effective date, Williams became aware of the physical injury to tangible
property or bodily injury.  However, Williams does not cite any cases in which
any court interprets policy language stating there is no coverage for injury
that has occurred or begun before the effective date of the insurance policy. 
Though Williams cites cases interpreting the definition of Aoccurrence@ or the policy
requirement of an injury or damage that Aoccurs during the
policy period,@ the insurance policies at issue in those cases did
not contain language similar to the language of the Exclusion. See, e.g.,
Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd=s Ins. Co., 852 S.W.2d 252,
257B58 (Tex. App.CDallas 1993, no
writ) (dealing with the definition of Aoccurrence@ and stating that
there is no coverage unless an identifiable damage or injury, beyond merely
causative negligence, occurs during the policy period); Dorchester Dev.
Corp. v. Safeco Ins. Co., 737 S.W.2d 380, 381B83 (Tex. App.CDallas 1987, no
writ) (deciding whether there was an Aoccurrence@ under the policy
and stating that there is an occurrence if property damage manifests itself or
becomes apparent).  Williams relies on the line of cases in which courts,
adopting a Amanifestation rule,@ have concluded
that damage occurs when it  manifests itself or becomes apparent; however, none
of these cases involved insurance policies that excluded coverage for injury or
damage which began before the effective date of the policy.  The cases that
Williams cites are not on point.[2] 
The CGL Policy excludes coverage as to injury or damage that first began before
the policy=s effective date (August 1, 1999).  To hold that this
exclusion does not apply to injury or damage that has begun but has not
manifested itself or become apparent would be contrary to the plain meaning of
the Exclusion.

We conclude, under the unambiguous language of the CGL
Policy, that there is no coverage for alleged property damage or bodily injury
that first occurred or began before the effective date of the CGL Policy. 
However, if the alleged property damage or bodily injury did not occur or begin
before the effective date but the alleged process leading to the ultimate
injury or damage began before that date, coverage is not excluded for this
reason.








C.      Did the
trial court err in concluding that, as a matter of law, the insurer does not
have a duty to indemnify the insured based on the Exclusion?

Williams asserts that the trial court erred in impliedly
ruling that, based on the Exclusion, as a matter of law, TIG has no duty to
indemnify Williams against the Mokrys= claims.  To prove
this traditional summary-judgment ground, TIG relied on two letters from
engineer Jim D. Wiethorn.  However, these letters do not address when the
Mokrys= alleged property
damage or bodily injury first occurred or began.  The specific language from
the letters on which TIG relies is Wiethorn=s statement that,
in his opinion, Asome degree of mold growth began at least
within the first two years following occupancy and has continued until the time
the [vapor] barrier was removed.@  In response to
TIG=s motion for
summary judgment, Williams attached excerpts from Wiethorn=s deposition, in
which Wiethorn testifies as follows:

!       He is not a microbiologist, and he could not
identify mold if he saw it.

!       He does not know when condensation formed in
the wall of the Mokrys= home as a result of the presence
and location of the vapor barrier.  

!       He does not
know when mold first appeared in the wall cavity of the Mokry=s home.








 Even presuming that there was some degree of mold growth
beginning within the first two years of occupancy and continuing until the
vapor barrier was removed, the summary-judgment evidence does not address when
the Mokrys= alleged property damage or bodily injury first
occurred or began.  Evidence that some mold grew in the first two years of
occupancy does not prove that the mold caused property damage or bodily injury
in the first two years of occupancy.  The summary-judgment evidence did not
conclusively prove that the Mokrys= alleged property
damage or bodily injury first occurred or began before August 1, 1999. 
Therefore, the trial court erred in granting TIG=s motion for
summary judgment as to TIG=s duty to indemnify.[3] 
See Roman Catholic Diocese of Dallas v. Interstate Fire & Cas. Co.,
133 S.W.3d 887, 897 (Tex. App.CDallas 2004, pet. denied) (holding trial
court erred in granting insurer=s motion for summary judgment because
insurer did not negate duty to indemnify as a matter of law).

D.      Did either party prove as a
matter of law whether the CGL Policy was Adelivered or issued for delivery@ in Texas?

In the trial court and on appeal, Williams has asserted
that TIG cannot rely on the Exclusion because it is an endorsement on a form
not approved by the Texas Insurance Commissioner.  Williams relies on the
following statute for this argument:

An insurance policy or printed endorsement form for use in writing the
types of insurance subject to this article may not be delivered or issued
for delivery in this state unless the form has been filed with and approved
by the commissioner.

Texas Ins. Code Ann.
art. 5.13-2 ' 8(a) (emphasis added), repealed by Act of May
24, 2005, 79th Leg., R.S., ch. 727, '18(d), 2005 Tex.
Gen. Laws 1752, 2187.  In its motion for summary judgment, Williams asserted
that this statute applies because the declarations page of the CGL Policy
states: AIssued by the
insurance company indicated: TIG Insurance Company, Administrative Office,
Irving, Texas 75039.@ 

TIG does not assert that the Texas Insurance Commissioner
approved the endorsement containing the Exclusion; rather, in its motion for
summary judgment, TIG asserted that this statute does not apply as a matter of
law because the CGL Policy was not Adelivered or
issued for delivery@ in Texas.  TIG relied on the following
summary-judgment evidence:








!       the declarations page of the CGL Policy which
lists ABSI Holdings, Inc.@ as the named insured, with an
address in Carmel, California.

!       evidence showing that the producer or agent
who placed the CGL Policy is located in Pasadena, California.  

!       a letter showing that, on February 27, 2002,
this same agent in Pasadena, California mailed a copy of the CGL Policy to a
claims management company.








Neither party has cited, nor has this court found, any
Texas cases construing the Adelivered or issued for delivery in this
state@ language in this
statute or in any other statute.  The interpretation of this statutory language
appears to be an issue of first impression in Texas.  We conclude that it
applies only to insurance policies or endorsement forms that are delivered in
Texas or issued for delivery in Texas.  See McDermott Int=l, Inc. v. Lloyds
Underwriters of London, 120 F.3d 583, 586B87 (5th Cir. 1997)
(interpreting same language in Louisiana insurance statute); Cook v. Herring,
521 So. 2d 807, 809B10 (La. Ct. App. 1988) (interpreting
substantially similar language in Louisiana insurance statute).  Williams
appears to argue that, if TIG issued the CGL Policy in Texas, then the policy
is subject to this statute.  This notion is incorrect under the unambiguous
language of the statute.  The statute applies only if TIG delivered the CGL
Policy in Texas or if TIG issued the CGL Policy for delivery in Texas.  Even
presuming that Williams proved TIG issued the CGL Policy in Texas, that does
not prove that TIG delivered the CGL Policy in Texas or issued it for delivery
in Texas.  In addition, though the evidence cited by TIG might suggest that the
CGL Policy was delivered in California, it does not prove as a matter of law
that the CGL Policy was delivered in California or issued for delivery in
California.  The agent=s mailing of a copy of the policy to a third
party in 2002 does not prove the state in which the CGL Policy was delivered in
1999.  After reviewing the summary-judgment evidence under the applicable
standard of review, we come to the twofold conclusion that Williams did not
prove as a matter of law that this statute applies to the CGL Policy and that
TIG did not prove as a matter of law that the statute does not apply. 
Therefore, the trial court did not err in denying Williams=s motion for
summary judgement as to this statute but did err to the extent it granted its
summary judgment based on the ground that the statute is inapplicable as a
matter of law.[4]

E.      Did the trial court err in
denying the insured=s motion for summary judgment asserting that the insurer
had a duty to indemnify the insured as a matter of law?

 Williams sought summary judgment that TIG has a duty to
indemnify against the Mokrys= claims as a matter of law.  Attempting to
avoid the effect of the Exclusion, Williams first argued that, even under the
Exclusion, the CGL Policy provides coverage as long as the injury or damage
does not manifest itself to the insured before the effective date of the
policy, and secondly, that the Exclusion is void because TIG did not obtain the
approval required by former article 5.13-2, section 8 of the Texas Insurance
Code.  The summary-judgment evidence upon which Williams relies for the first
argument addresses only when the Mokrys first became aware of the alleged
injury or damage.  We already have determined that Williams=s interpretation
of the Exclusion to contain the manifestation rule is incorrect as a matter of
law.  Further, as stated above, Williams did not prove as a matter of law that
former article 5.13-2, section 8 of the Texas Insurance Code applies. 
Therefore, under the unambiguous language of the CGL Policy and former article
5.13-2, section 8, the trial court did not err in denying Williams=s motion for
summary judgment as to the duty to indemnify.[5]








F.       Did the insurer have a duty to defend?       

In its motion for summary judgment, TIG did not assert that
it owed no duty to defend; however, it did urge that, for the reasons stated
therein, the trial court should grant summary judgment against all of Williams=s claims.  In its
motion, Williams asserted that, as a matter of law, TIG breached its duty to
defend Williams against the Mokrys= claims.  In analyzing this issue, we look
first to the policy and then to the pleading to determine if coverage exists. 
If a pleading does not allege facts within the scope of coverage, an insurer is
not legally required to defend a suit against its insured.  Nat=l Union Fire Ins. Co. v. Merchs. Fast
Motor Lines, Inc.,
939 S.W.2d 139, 141 (Tex. 1997).  We determine TIG=s duty to defend based on the Mokrys= allegations and the language of the
CGL Policy.  See id.  This standard for determining coverage from the
four corners of the pleading and the four corners of the insurance policy is
referred to as the Aeight corners@ rule.  See id.  Applying the eight-corners rule, we
give the Mokrys= allegations a liberal interpretation.  See id.  If
these allegations do not state facts sufficient to bring the case clearly
within or without the coverage, the general rule is that the insurer is
obligated to defend if potentially there is a case under the Mokrys= pleading within the coverage of the
policy.  See id.  In making this determination, we must focus on the
Mokrys= factual allegations that show the
origin of the alleged damages rather than on the legal theories alleged.  See
id.  We will not read facts into the Mokrys= pleading, nor will we look outside
of their pleading, or imagine factual scenarios which might trigger coverage.[6] 
See id. at 142. 








In their pleadings, the Mokrys alleged that the design,
construction, and installation of the vapor barrier was not in accordance with
the plans and specifications and that this work was not performed in a good and
workmanlike manner.  As a result, the Mokrys asserted, mold grew in their home
causing them illness and destroying some of their possessions.  The Mokrys
claimed that, as a result of the mold contamination, they were  forced to leave
their home and to remediate the damage to their dwelling.  The Mokrys alleged
that they entered into their construction contract on or about June 9, 1991,
and took possession of their home on August 29, 1991.  In their pleadings, the
Mokrys  do not specify any other dates.  The Mokrys sought recovery against
Williams for bodily injury and physical injury to tangible property (which
constitutes Aproperty damage@ under the CGL
Policy), but they did not allege that their property damage or bodily injury
first occurred or began before the effective date of the policy (August 1,
1999).  Based on the Mokrys= allegations, it is possible that the
alleged mold growth did not begin to cause any bodily injury or physical injury
to tangible property until after the effective date.  After reviewing the
Mokrys= claims and the
terms of the CGL Policy, we conclude that the Mokrys= allegations do not state facts sufficient to bring the
Mokrys= claims clearly within or without
coverage.  Because potentially the Mokrys= claims were within the coverage of
the CGL Policy, we conclude that, as a matter of law, TIG had a duty to defend
Williams against the Mokrys= claims.  See Gehan Homes, Ltd. v. Employers Mut. Cas. Co.,
146 S.W.3d 833, 839B46 (Tex. App.CDallas 2004, pet. filed) (concluding insurer had duty to
defend and that construing the pleadings liberally in favor of the insured, the
court could not conclude that no claims were  alleged during the policy
period).

                                                             IV. Conclusion








Under the plain meaning of the Exclusion, there is no
coverage under the CGL Policy as to any alleged property damage or bodily
injury that first occurred or began before the effective date of the policy;
however, if the alleged property damage or bodily injury did not occur or begin
before that date, but the alleged process leading to the ultimate injury or
damage began before that date, coverage is not excluded for this reason.  The
trial court erred in granting TIG=s motion for
summary judgment as to the duty to indemnify, but the trial court did not err
in denying Williams=s motion for summary judgment as to the
duty to indemnify.  Neither party proved as a matter of law where the CGL
Policy was delivered or where the CGL Policy was intended to be delivered when
issued.  Therefore, the trial court erred in impliedly ruling that, as a matter
of law, former article 5.13-2, section 8 does not apply to the CGL Policy. 
However, the trial court did not err in denying summary judgment as to Williams=s argument that
this statute applies as a matter of law.  

Even though Williams has suffered no damages as a result of
any breach by TIG of its duty to defend Williams against the Mokrys= claims, this
issue is not moot because Williams is appealing the trial court=s denial of its
request for Chapter 37 attorney=s fees.   Under the eight-corners rule,
TIG had a duty to defend Williams against the Mokrys= claims.  Because
the trial court erred in granting summary judgment as to duty-to-indemnify
issues, it also erred in granting summary judgment as to Williams=s request for
attorney=s fees on the
ground that Williams=s indemnity claim fails as a matter of
law.  However, the trial court did not err in denying Williams=s motion for summary
judgment seeking attorney=s fees as a matter of law.  On remand, the
trial court can assess Williams=s request for attorney=s fees under
Chapters 37 and 38 after Williams=s claims regarding
the duty to indemnify are resolved.  Accordingly, we reverse the trial court=s denial of
Williams=s motion for
summary judgment as to the duty to defend, affirm the trial court=s denial of the
remainder of that summary-judgment motion, reverse the trial court=s order granting
TIG=s motion for
summary judgment, and remand for further proceedings consistent with this
opinion.

 

 

/s/          Kem Thompson Frost

Justice

 

 

Judgment rendered
and Opinion filed July 31, 2007.

Panel consists of
Justices Frost, Seymore, and Guzman.









[1]  Any reference in this opinion to a chapter is a
reference to a chapter of the Texas Civil Practice and Remedies Code.





[2]  If the CGL Policy did not contain the Exclusion,
then these cases might be on point.  However, if this were the case, we still
would reject Williams=s argument based on this court=s decision in Pine Oak Builders, Inc. v. Great
American Lloyds Ins. Co., CS.W.3d C, C, No.
14-05-00487-CV, 2006 WL 1892669 at *6B8
(Tex. App.CHouston [14th Dist.] July 6, 2007, pet. filed)
(rejecting the Amanifestation rule@
and adopting Aexposure rule@ as
to CGL policies with substantially the same language as TIG=s CGL Policy, except that these policies did not
contain the language in the Exclusion).





[3]  In its motion for summary judgment, TIG asserted
that Williams had offered no evidence that the alleged damaging process did not
begin at the Mokry residence before the CGL Policy first took effect.
Presuming, without deciding, that this would otherwise constitute a valid
no-evidence summary-judgment ground, the trial court still erred in impliedly
granting summary judgment on this basis.  As discussed above,  under the
Exclusion, if the alleged property damage or bodily injury did not occur or
begin before August 1,1999, but the alleged process leading to the ultimate
injury or damage began before that date, coverage is not excluded.





[4]  The summary-judgment motions and appellate briefs
have not addressed the effect, if any, of the Texas Legislature=s repeal of this statute as of April 1, 2007, and we
do not address this issue either.  See Act of May 24, 2005, 79th Leg.,
R.S., ch. 727, 2005 Tex. Gen. Laws 1752, 2187. 





[5]  TIG also stated in its motion for summary judgment
that A[Williams] has come forward with no evidence in its
[motion for] summary judgment nor discovery relative to this [the bodily
injury] aspect of the [indemnity] claim, if any, so summary judgment is
improper relative to any Abodily injury@
claims that might be advanced under the policy.@  This argument, although contained in TIG=s cross-motion, is a response to Williams=s motion for summary judgment rather than a ground
asserted in support of a summary judgment in TIG=s favor.





[6]  No party to this appeal has asserted that any
alleged exception to the eight-corners rule applies to this case; therefore, we
need not and do not address whether any such exception exists or, if so,
whether it applies to this case.  See Collier v. Allstate Cty. Mut. Ins. Co.,
64 S.W.3d 54, 59 n.3 (Tex. App.CFort Worth
2001, no pet.).