COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-027-CV

ALLSTATE INSURANCE COMPANY       APPELLANTS

AND ALLSTATE TEXAS LLOYD’S 

V.

JOHN HUNTER AND WIFE, APPELLEES

CARMEN HUNTER

------------

FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

The primary issue we address in this appeal is whether the trial court correctly charged the jury on the manifestation trigger of coverage theory applicable to a first-party claim under a homeowner’s insurance policy.  Because we hold that charge error exists and because the evidence, measured against the requested correct charge, is legally insufficient, we reverse the trial court’s judgment and render judgment that Appellees John and Carmen Hunter take nothing.

II.  Factual and Procedural Background

In the summer of 2002, the Hunters noticed a strange smell in their home.  The Hunters’ HO-B homeowner’s insurance policy with Appellants Allstate Insurance Company and Allstate Texas Lloyd’s expired on October 6, 2002, and the Hunters replaced it with an HO-A homeowner’s policy from Allstate, which was effective on October 7, 2002.  The strange smell persisted, and in December 2002, the Hunters hired a company to conduct air sample testing in their home; the results revealed no elevated mold content in the air and offered no explanation for the smell.  On February 4, 2003, a general contractor, Bill Hart, inspected the Hunters’ home.  When Hart entered the crawlspace under the home, he saw water damage and mold.  The Hunters both testified that this was the first time that they knew of the mold damage or that the source of the odor that they had been smelling was mold.  Two days later, the Hunters notified Allstate of their claim.

Allstate adjuster Stella Miller determined that the Hunters’ claim should be treated as a claim under the HO-A policy and hired a plumber to inspect the Hunters’ home.  The plumber’s report showed an ongoing water leak at the Hunters’ home.  Because the HO-A policy covered only “sudden and accidental” plumbing leaks, Allstate denied the Hunters’ claim under the HO-A policy.
(footnote: 1)
 The Hunters then requested that Allstate treat their claim as one under their prior HO-B policy that had expired on October 6, 2002.  Allstate did so and denied coverage under the HO-B policy approximately eleven days later.  The denial was based on the Hunters’ failure to comply with the condition of the HO-B policy requiring prompt notice of the claim; Allstate reasoned that if the claim had occurred under the prior HO-B policy that expired on October 6, 2002, then the Hunters’ February 2003 notice of that claim was not timely.

The Hunters sued Allstate, alleging that it had breached its contract of insurance, and a jury returned a verdict for the Hunters.  The trial court entered judgment on the jury’s verdict for the Hunters on the Hunters’ breach of contract claim, attorney’s fees, and an eighteen percent penalty under the Prompt Payment Act.  The trial court granted Allstate’s motion for judgment notwithstanding the verdict on the Hunters’ extra-contractual claims.

Allstate perfected this appeal, raising seven issues.  The Hunters filed an Appellees’ brief raising three cross-points contending that the trial court erred by granting judgment notwithstanding the verdict.

III.  Charge Error

A. Standard of Review

The standard of review for alleged jury charge error is abuse of discretion.  
Shupe v. Lingafelter
, 192 S.W.3d 577, 579 (Tex. 2006); 
Steak & Ale of Tex., Inc. v. Borneman
, 62 S.W.3d 898, 904 (Tex. App.—Fort Worth 2001, no pet.).  The trial court has broad discretion in submitting jury questions so long as the questions submitted fairly place the disputed issues before the jury.  
TXI Transp. Co. v. Hughes
, 224 S.W.3d 870, 900 (Tex. App.—Fort Worth 2007, pet. filed); 
Toles v. Toles
, 45 S.W.3d 252, 263 (Tex. App.—Dallas 2001, pet. denied).  This broad discretion is subject only to the limitation that controlling issues of fact must be submitted to the jury.  
Tex. R. Civ. P
. 278; 
TXI Transp. Co.
, 224 S.W.3d at 900.  A trial court abuses its discretion by acting arbitrarily, unreasonably, or without consideration of guiding principles.  
See Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986); 
Borneman
, 62 S.W.3d at 904.  That is, in preparing the charge, trial courts have no discretion to misstate the law
.  St. Joseph Hosp. v. Wolff
, 94 S.W.3d 513, 525 (Tex. 2003).

In cases involving charge error, an appellate court will reverse only if the error “was reasonably calculated to and probably did cause the rendition of an improper judgment.”  
Bed, Bath & Beyond, Inc. v. Urista
, 211 S.W.3d 753, 757 (Tex. 2006) (examining entire record to determine whether error in submitting unavoidable accident instruction was harmful) (quoting 
Reinhart v. Young
, 906 S.W.2d 471, 473 (Tex. 1995)); 
accord Shupe
, 192 S.W.3d at 579 (examining harm from charge error in failing to submit a requested instruction).  We examine the entire record to evaluate whether the charge error probably caused the rendition of an improper verdict.  
Bed, Bath & Beyond, Inc.
, 211 S.W.3d at 757.

B. The Law Concerning the Manifestation Trigger of Coverage

The word “trigger” is used in the insurance context as a term of art meaning the event that activates coverage under one or more insurance policies.  
See Hoechst Celanese Corp. v. Certain Underwriters at Lloyd’s London
, 673 A.2d 164, 166 n.2 (Del. 1996).  The trigger of coverage problem arises in determining exactly what must take place within the policy’s effective dates to trigger coverage.  Numerous trigger of coverage theories exist, including the manifestation trigger, the exposure trigger, the continuous trigger, and the injury-in-fact trigger.  
Accord Guar. Nat’l Ins. Co. v. Azrock Indus. Inc., 
211 F.3d 239, 243-27 (5th Cir. 2000) (explaining various triggers of coverage); 
APIE v. Garcia
, 876 S.W.2d 842, 853 n.20 (Tex. 1994) (recognizing the existence of various trigger of coverage theories).  No Texas state appellate court has discussed which of the trigger of coverage theories should apply to a first-party claim under a standard homeowner’s insurance policy based on continuing or progressively deteriorating damage to the insured’s dwelling.  
Accord State Farm Fire & Cas. Co. v. Rodriguez
, 88 S.W.3d 313, 322 (Tex. App.—San Antonio 2002, pet. denied) (simply applying the manifestation trigger theory to a homeowner’s claim for progressively deteriorating property damage to the insured’s dwelling without discussion of other trigger of coverage theories).

Several Texas appellate courts have, however, addressed the appropriate trigger of coverage in the context of a liability claim brought by a third party.  
See
 
Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.
, No. 14-05-00487-CV, 2006 WL 1892669, at *6-8 (Tex. App.–Houston [14th Dist.] July 6, 2006, no pet.); 
Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd’s Ins. Co.
, 852 S.W.2d 252, 257 (Tex. App.—Dallas 1993), 
writ denied
, 889 S.W.2d 266 (Tex. 1994) (per curaim); 
Dorchester Dev. Corp. v. Safeco Ins. Co., 
737 S.W.2d 380, 383 (Tex. App.—Dallas 1987, no writ).

In 
Pine Oak Builders
, the Houston Fourteenth Court of Appeals applied the exposure and continuous trigger of coverage theories to third-party claims under a comprehensive general liability (CGL) policy for continuing property damage based on defective construction.  2006 WL 1892669, at *6-8.  The appellate court in 
Cullen/Frost
 in effect applied the continuous trigger of coverage theory to a bank’s commercial general liability insurance policy to determine the insurer’s duty to defend the bank in a suit brought by a third party by holding, “We reject the argument that there can be only one occurrence when the facts allege continuous or repeated exposure causing continued or multiple property damages over an extended period of time.”  852 S.W.2d at 257.  In 
Dorchester Development Corp.
, the Dallas Court of Appeals applied the manifestation trigger of coverage theory to a general contractor’s commercial general liability insurance policy to determine the insurer’s duty to defend the general contractor in a suit brought by a third party.  737 S.W.2d at 383.  And the Court of Appeals for the Fifth Circuit, making an 
Erie
 guess based on Texas law, held that the exposure trigger of coverage theory applied to trigger an insurer’s duty to defend under a commercial general liability policy against third party claims for asbestosis.  
Azrock Indus., Inc.
, 211 F.3d at 246-47.  Based on the contractual differences between first-party homeowner’s property insurance and third-party liability insurance, however, commentators warn that the trigger of coverage theories for both types of insurance should not necessarily be the same and also warn against unintentionally superimposing trigger of coverage theories in one area onto the other.  
See 
Note
, Triggering Coverage of Progressive Property Loss: Preserving the Distinctions Between First- and Third-Party Insurance Policies
, 35 
Wm. & Mary L. Rev. 
1801, 1808 (1994); 
see also Azrock Indus., Inc.
, 211 F.3d at 246-47 (distinguishing between trigger of coverage theories for third-party personal injury claims and first-party property claims).

Although no Texas state appellate court has specifically discussed the distinctions among the various trigger of coverage theories in the context of coverage under a standard, first-party homeowner’s insurance policy for a first-party claim based on continuing or progressively deteriorating damage to the insured’s dwelling, two courts have applied the manifestation trigger to such claims.  
See State Farm Fire & Cas. Co.
, 88 S.W.3d at 322; 
Flores v. Allstate Tex. Lloyds Co.
, 278 F. Supp. 2d 810, 815-16 (S.D. Tex. 2003).
(footnote: 2)
 In 
State Farm Fire & Casualty
, the San Antonio Court of Appeals applied the manifestation trigger of coverage theory to a claim by homeowners for progressive property damage to their foundation allegedly caused by a plumbing leak.  88 S.W.3d at 317-18.  The court stated, “Texas courts have held that property loss occurs when the injury of damages is manifested.”  
Id
. at 322 (quoting 
State Farm Mut. Auto. Ins. Co. v. Kelly
, 945 S.W.2d 905, 910 (Tex. App.—Austin 1997, writ denied)).
(footnote: 3)
 In 
Flores
, the United States District Court for the Southern District of Texas applied the manifestation trigger of coverage theory to a homeowner’s insurance policy in a suit by the homeowner against the insurer for breach of contract, bad faith, and statutory violations based on the insurer’s failure to investigate and pay the homeowner’s claim for water damage and mold.  278 F. Supp. 2d at 815-16.  The court explained that the Floreses made a claim for mold damage, “not the initial water events,” and that “the mold claim did not arise until the mold damage became apparent”; that is, “the date of occurrence [for the Floreses’ mold claim] is when the damage is capable of being easily perceived, recognized, and understood.”  
Id.
 at 816 (citing 
Am. Home Assurance Co. v. Unitramp Ltd.
, 146 F.3d 311, 314 (5th Cir. 1998)).

Although the 
Flores 
case involved a first-party property damage claim, the 
Flores
 court cited 
Unitramp,
 which was a third-party liability claim.  
Unitramp
 involved a third party’s claim against a fuel broker for watered fuel sold to a third party.  146 F.3d at 312-13.  The fuel broker’s insurer issued a new policy that became effective three days after the fuel was loaded onto the third party’s tanker—the policy in effect when the fuel was loaded did not provide coverage, the new policy did. 
 Id
. at 313.  Hence, the issue was when the damage from the purchase of the watered fuel became manifest or identifiable.  
Id.
 at 313-14.  The third party learned of the watered fuel five days after it was loaded when a laboratory forwarded test results to the third party.  
Id
. at 312.  The court held that the damage occurred when it was “readily apparent” and defined apparent as “capable of easy perception.”  
Id
. at 313- 314.  Because the watered nature of the fuel was not visible to the naked eye, the court held that the damage became apparent when the third party received the laboratory test results.  
Id.
  The court specifically declined to equate “apparent” with “capable of being known by testing” because “[t]o interpret it as such would burden insureds with a unprecedented duty to conduct limitless tests and inspections for hidden defects.”  
Id.
 at 314.

The parties agree that the manifestation trigger of coverage applies to the Hunters’ homeowner’s insurance policy with Allstate for coverage of progressive property damage to the Hunters’ dwelling.
(footnote: 4)  Nonetheless, the terminology and language used in the insurance contract itself is controlling.  
Fiess v. State Farm Lloyds
, 202 S.W.3d 744, 745 (Tex. 2006).  We have examined the language of the contract at issue, the Hunters’ HO-B policy with Allstate, and the language supports the parties’ agreement that the manifestation trigger of coverage theory applies to the Hunters’ HO-B policy concerning progressive property damage to the Hunters’ dwelling.
(footnote: 5)
 C. The Court’s Charge

Special question number one asked the jury, “Do you find from a preponderance of the evidence that on or before October 6, 2002 there was rot, mold, or other fungi which was capable of being perceived, recognized and understood?”  And the jury answered, “Yes.” 

Allstate’s counsel objected to this special question, stating,

On Question Number 1, Your Honor, we object that there is no evidence to support the submission of this question to the jury.  And we also have an objection to the form of the question where it says, “. . . which was capable of being perceived, recognized, and understood.”

The cases - - the case that I think that phrase is taken from would be the  
Flores
 case and the 
Unitram 
[sic] case out of the federal courts. And they insert the word, “. . . capable of being 
easily
 perceived, recognized, and understood.”

And I can show that language to you, if you would care to see it.

. . . .

And then I would also add in that at the end of the phrase, our concern here is that the jury is not going to know as to who is supposedly capable of receiving [sic], recognizing, and understanding this - - this damage.  And so we would insert the phrase at the end of the question, “. . . by a reasonably prudent homeowner.”
(footnote: 6)
 Those are our objections to Question Number 1.

(Emphasis added).  

D. Application of the Law to the Present Facts

In its first issue, Allstate contends that the trial court erred by submitting the manifestation trigger of coverage theory question without inserting the word “easily” before the phrase “perceived, recognized, and understood.”  Allstate complains that the trial court compounded this error by also overruling Allstate’s objection to the omission of the phrase “by a reasonably prudent homeowner” from the conclusion question one.  Consequently, Allstate argues that special question number one actually submitted the exact manifestation theory specifically rejected by the 
Unitramp
 court; that is, a manifestation question that permitted a finding of manifestation based only on a determination that the rot, mold, or other fungi in the Hunters’ home was “
capable
 of being perceived, recognized, or understood” by some unidentified person.  This, Allstate contends, imposes the exact burden on homeowners that was disavowed by the 
Unitramp
 court, “the unprecedented duty to conduct limitless tests and inspections for hidden defects.”  
Unitramp, 
146 F.3d 
at 314.

Allstate further points out that the manifestation theory submitted by the trial court is unworkable because it means that mold manifests for purposes of triggering coverage under a homeowner’s policy when it is theoretically “capable” of perception through some type of exotic testing that was not actually performed.  Under such a theory of manifestation, the homeowner could not possibly comply with the policy’s notice provision because a homeowner cannot provide notice of a mold claim to an insurer until the 
homeowner
 possesses actual knowledge of the mold, i.e., not at some earlier date when the mold could have been perceived through testing or by someone crawling in the crawl space.  
See Flores
, 278 F. Supp. 2d at 816 (discussing the manifestation trigger of coverage theory and noting that an “insured cannot provide notice until he is aware of facts relating to a claim”).

Finally, Allstate points out that the Hunters utilized two different theories or dates of manifestation at trial.  They obtained an affirmative answer to question number one by proving that the rot, mold, or fungi in their dwelling was theoretically 
capable
 of being perceived, recognized, and understood by some unidentifiable person on or before October 6, 2002.  But then, in order to obtain a jury finding in their favor on the question of whether they provided timely notice to Allstate, the Hunters proved that they provided notice two days after they actually 
learned
 of the mold—not after the mold was 
capable 
of being perceived—which was more than four months after the HO-B policy expired.  Thus, Allstate argues that the Hunters claimed the mold was “manifest” for purposes of triggering coverage when it was theoretically capable of being perceived by some unidentified person, but it was not “manifest” for purposes of triggering their duty to give notice to Allstate until it was actually discovered. 

We agree with Allstate that the manifestation question propounded to the jury in special question number one should have contained the word “easily” prior to the phrase “capable of being perceived, recognized, and understood”   
See Unitramp
, 146 F.3d at 314 (defining the manifestation trigger of coverage theory as being “when the damage is capable of being easily perceived, recognized and understood”); 
see also Flores
, 278 F. Supp. 2d at 816 (quoting the foregoing language from 
Unitramp
).  We also agree with Allstate that the Hunters cannot utilize two different manifestation theories or dates, one to trigger coverage under the HO-B policy—when the rot, mold, or fungi was theoretically capable of perception—and one to determine when the Hunters’ duty to give notice arose—when the Hunters actually learned of the mold.  
See Flores
, 278 F. Supp. 2d at 816.

Accordingly, we sustain Allstate’s first issue.

IV.  Legal Sufficiency of the Evidence

A. Standard of Review

When the trial court submits an erroneous question over a proper objection, we measure the legal sufficiency of the evidence supporting the jury’s finding against the proper, requested submission.  
See St. Joseph Hosp., 
94 S.W.3d at 530 (distinguishing 
Osterberg v. Peca
, 12 S.W.3d 31, 55 (Tex. 2000), which held that, absent an objection, the appellate court is to measure sufficiency against the charge actually submitted).  Consequently, here, we review the evidence against the question that should have been submitted, “Do you find from a preponderance of the evidence that on or before October 6, 2002 there was rot, mold, or other fungi which was capable of being 
easily
 perceived, recognized and understood?”

A legal sufficiency challenge may only be sustained when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)
.  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could, and disregard evidence contrary to the finding unless a reasonable fact-finder could not.
  
City of Keller v. Wilson
, 
168 S.W.3d 802, 827
 (Tex. 2005).

B. No Evidence of Manifestation Prior to October 6, 2002

Stella Miller, Allstate’s adjuster on the Hunters’ claim, testified that the Hunters filed a claim, she received it on February 7, 2003, and she contacted Mr. Hunter.  She explained that the Hunters’ policy (the HO-A policy) covered damage arising only from sudden and accidental discharge from the plumbing system.  She explained that mold in and of itself was not covered.  Because Mr. Hunter was unsure whether his dwelling had experienced any plumbing leaks, she provided him with a plumber who could determine that.  The plumber’s report indicated that the leak was “ongoing” but could not pinpoint a date on which the leak began.  Miller testified that the Hunters’ claim was not covered under the HO-A policy because it was not due to a sudden and accidental discharge, and it was not covered under the Hunters’ prior HO-B policy because their notice was not timely under that policy.

Miller was cross-examined concerning Allstate’s “Mold Reference Manual,” which indicates that two mold triggers exist; one is a report of visible mold at the home by the occupants or by a vendor at the scene, and the other is a report of mold odors from the home’s occupants or from a vendor at the scene.  All parties agree that the Hunters, in discussing their February 6, 2003 claim with Allstate, told Allstate for the first time that their home had smelled musty since the previous summer or earlier.  

John Hunter testified that he had smelled a musty odor in his home in August 2002.  Approximately four months later, in December 2002, he hired a company to come to his home and conduct mold testing.  The testing showed no elevated level of mold in the Hunters’ home.  The Hunters then—in February 2003—hired Bill Hart to inspect their home, and he found water damage and mold in the crawlspace under the home.  Mr. Hunter testified that he went into the crawlspace under the home one time between 1994 and 2004, right before his first child was born, and it was dry.
(footnote: 7)
 On cross-examination, Mr. Hunter testified that before he purchased the home in 1994, a man named Crum inspected the home.  That inspection showed water standing on the west side of the house near the foundation and under the crawlspace.  The inspection indicated that the water may have been entering the crawlspace via a leaking outside hose that was on. 

Carmen Hunter testified that she began smelling a musty odor in the spring of 2002.  She searched for the source of the odor; she never called Allstate.  They hired people to inspect their home; they didn’t call Allstate.  Then, after Bill Hart found mold in their home on February 4, 2003, they called Allstate.  

Several experts testified about the damage to the Hunters’ home and the extensive repairs needed based on the mold and wood rot.

The evidence does establish that the damage to the Hunters’ home may have occurred prior to October 6, 2002.  But, using the proper case law definition of “manifest”—that is, when the damage was capable of being 
easily
 perceived, recognized and understood—there is no evidence that the damage manifested prior to that date.  
See Flores
, 278 F. Supp. 2d at 816 (utilizing this definition of manifest).  In fact, the evidence establishes that despite searches by Mrs. Hunter and air-testing by experts, the damage to the Hunters’ home did not “manifest” until February 4, 2003, when Bill Hart found it in the crawlspace under the Hunters’ home.

The Hunters argue that a damage manifests when it is capable of being perceived by one’s senses and that, consequently, the mold manifested prior to October 6, 2003, because the Hunters smelled it prior to that date.  The problem with this argument is that if the damage manifested itself on the date that the Hunters smelled it, then that is date on which the Hunters’ duty to notify Allstate of this claim was triggered.  
See Flores
, 278 F. Supp. 2d at 816-17 (explaining that a “party cannot be said to sustain actual property damage until such damage becomes manifest” and that notice is required when the damage manifests).  The Hunters did not notify Allstate of the mold smell until February 6, 2003.

The Hunters also argued at trial that Allstate’s Mold Reference Manual listed a reporting of a mold smell by the homeowner as a “mold trigger” providing coverage under their HO-B policy because they smelled the odor during the HO-B policy period.  If the Hunters had filed a claim with Allstate in the spring of 2002 when they smelled what turned out to be mold, there is no question that their HO-B policy with Allstate would have covered the claim.
(footnote: 8)  The evidence establishes, however, that the Hunters did not contact Allstate when they smelled the odor in their home.  Consequently, the “mold trigger” referenced in Allstate’s Mold Reference Manual did not happen; that is, neither the homeowner nor a vendor reported to Allstate during the policy period of the HO-B policy that mold or any odor was present at the Hunters’ home.  We have found no support for the Hunters’ argument that their action of telling Allstate in February 2003 that they had been smelling an odor for ten months triggered coverage in the absence of the filing of a claim with Allstate or of notifying Allstate during that ten-month period.

Considering the evidence favorable to the jury’s finding in response to a proper submission of question one—whether 
there was rot, mold, or other fungi in the Hunters’ dwelling on or before October 6, 2002, which was capable of being easily perceived, recognized, and understood
—
there is a complete absence of evidence supporting the jury’s “yes” answer.  
See
 
Uniroyal Goodrich Tire Co., 
977 S.W.2d at 334.  Accordingly, we sustain Allstate’s third issue.
 

V.  The Hunters’ Cross-Issues

The Hunters raise two cross-issues in their brief, complaining of the judgment notwithstanding the verdict entered by the trial court on their extracontractual claims; the Hunters seek judgment on the jury’s verdict on these claims.  Extracontractual damages are not recoverable by the Hunters in light of our disposition of Allstate’s third issue concerning the Hunters’ breach of contract claim—that no evidence exists that the damage to the Hunters’ home manifested during the HO-B policy period—and in light of the Hunters’ concession that no coverage exists under the HO-A policy.  
See Republic Ins. Co. v. Stoker
, 903 S.W.2d 338, 341 (Tex. 1995); 
Perrotta v. Farmers Ins. Exch.
, 47 S.W.3d 569, 575 (Tex. App.—Houston [1st Dist.] 2001, no pet.); 
Trivoli Corp. v. Jewelers Mut. Ins. Co.
, 932 S.W.2d 704, 712 (Tex. App.—San Antonio 1996, writ denied).  Accordingly, we overrule the Hunters’ cross-issues.

VI. Conclusion

Having sustained Allstate’s first and third issues and overruled the Hunters’ cross-issues, we reverse the trial court’s judgment; and because no evidence exists that the Hunters’ property damage manifested during the HO-B policy period, we render judgment that the Hunters take nothing on their claims under that policy.  Because the remainder of the Hunters’ claims are predicated on a finding that their February 6, 2003 claim was covered under the HO-B policy, we reverse the trial court’s judgment on the Hunters’ other claims and render judgment that the Hunters take nothing.   

SUE WALKER

JUSTICE 

PANEL B: LIVINGSTON, WALKER and MCCOY, JJ.

DELIVERED: November 21, 2007

FOOTNOTES
1:
The Hunters did not contend at trial and do not contend on appeal that their mold claim was covered under their HO-A policy.  John Hunter testified at trial, “ I - - I agree that it’s not covered under the HO-A policy.” 

2:
Other states have likewise applied the manifestation trigger of coverage theory in first-party progressive property loss situations.  
See, e.g.
, 
Prudential-LMI Commercial Ins. v. Superior Court
, 798 P.2d 1230, 1246 (Cal. 1990); 
Jackson v. State
 
Farm Fire & Cas. Co.
, 835 P.2d 786, 789 (Nev. 1992);
 Winding Hills Condo. Ass’n, Inc. v. N. Am. Specialty Ins. Co.
, 752 A.2d 837, 840 (N.J. Super. Ct. App. Div. 2000); 
Ellis Court Apartments Ltd. P’ship v. State Farm Fire & Cas. Co.
, 72 P.3d 1086, 1089 (Wash. Ct. App. 2003); 
see also 
Gregory A. Goodman,
 Insurance Triggers as Judicial Gatekeepers in Toxic Mold Litigation
, 57 
Vand. L. Rev. 
241 (2004) (urging the adoption of the manifestation trigger of coverage theory in all types of mold litigation). 

3:
In 
Kelly
, the Austin Court of Appeals held that an automobile insurance policy covered an “accidental loss” incurred by the policy holder when the insured’s automobile was confiscated because it had been stolen earlier in the chain of title.  The insurer argued that the loss occurred when the vehicle was sold with defective title, not when the vehicle was confiscated.  
Id.
  The court  disagreed and held that the loss occurred when the injury or damage was manifested, i.e., when the vehicle was confiscated.  
Id.
  

4:
The Hunters’ brief on appeal states, “Appellee has no objection to the application of the manifestation rule to this case.”  Nonetheless, because the proper trigger of coverage theory to be applied is a question of law that we review de novo, we have discussed it and conclude independently of the parties’ agreement that it applies here.  

5:
We note that although the policy defines “occurrence” as “an accident, including exposure to conditions, which result[s] in bodily injury or property damage during the policy period,”—this definition is commonly associated with an exposure trigger of coverage theory—the term “occurrence” is not used in connection with the “Section I” dwelling coverage.  
See
 
Pine Oak Builders, Inc.
, 2006 WL 1892669, at *6-8 (utilizing the definition of “occurrence” as including continuous or repeated exposure to apply the exposure trigger of coverage).  The pertinent provision of the Hunters’ HO-B policy that addresses when Section I coverage for damage to the Hunters’ dwelling is triggered provides, “This policy applies only to loss in Section I or bodily injury or property damage in Section II which occurs during the policy period stated on the declarations page.”
  
See also Azrock Indus. Inc.
, 211 F.3d at 251-52 (applying the exposure trigger of coverage theory to a CGL policy’s liability insurance—which utilized the “occurrence” definition at issue here—but applying the manifestation trigger of coverage theory to a property damage claim under the same policy).   

6:
Because, as discussed below, we sustain Allstate’s first issue contending that the omission of the word “easily” from special question one over Allstate’s objection constituted error and also sustain Allstate’s legal sufficiency challenge, we need not address the omission of the phrase “by a reasonably prudent homeowner” from special question one.  
See 
Tex. R. App. P.
 47.1 (requiring appellate court to address only issues necessary to disposition of appeal).

7:
The date of the birth of the Hunters’ first child is not in the record, but their second child, Benjamin, was born in 2000. 

8:
We note that, under the state of the law in the spring of 2002, mold caused by plumbing leaks constituted covered property damage under HO-B policies; that coverage has subsequently been called into question.  
See
 
Fiess
, 202 S.W.3d at 745.  
But see Balandran v. Safeco Ins. Co. of Am.
, 972 S.W.2d 738, 741 (Tex. 1998).