# NO. 12-22-00086-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BOBBY JOE HALL,* *APPELLANT* | § | *APPEAL FROM THE 418TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *KRISTIN KISTNER HALL,* *APPELLEE* | § | *MONTGOMERY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant Bobby "Joe" Hall, acting pro se, challenges the trial court's divorce decree.[1]  In five issues, Joe argues that the court erred by failing to present all disputed fact issues to the jury, changing his live pleading during trial, refusing to address his counterclaim, awarding Kristin Kistner Hall a greater share of the marital home than she requested, and preventing him from asking Kristin questions about her lifestyle.  We affirm.

## BACKGROUND

Joe and Kristin married in 1996.  On April 22, 2021, Kristin filed an original petition for divorce on grounds of insupportability.  On May 5, she filed a first amended petition adding some identifying information.  On May 28, Joe filed an answer denying any conduct supporting dissolution of the marriage, demanding a jury trial, and requesting spousal maintenance and a disproportionate share of the estate.  On July 19, Kristin filed a second amended petition for divorce on grounds of insupportability, cruel treatment, and adultery, and requesting a disproportionate share of the estate.  On November 5, Joe filed a first amended answer and counterclaim, alleging that Kristin treated him with emotional cruelty.  On December 1, Kristin

---

[1] This case was transferred to this Court from the Ninth Court of Appeals in Beaumont, Texas, pursuant to a docket equalization order.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

1

filed a third amended petition for divorce on grounds of insupportability alone and requesting a disproportionate share of the estate.

At trial, the court indicated that because it had not granted leave to either party to file untimely pleadings, the live pleadings were Kristin's second amended petition and Joe's original answer. Kristin nonsuited the grounds of cruel treatment and adultery. Both parties stipulated that the divorce should be granted. After the jury trial, one question was submitted to the jury instructing it to determine the values of several of the parties' assets. After the jury rendered its verdict, a bench trial was had on issues to be determined by the court. The court granted the divorce on grounds of insupportability and divided the community property estate. This appeal followed.

## CHARGE ERROR

In Joe's first issue, he argues that the trial court erred by failing to present all disputed fact issues to the jury. Specifically, he contends that the court should have allowed the jury to decide which party was at fault for the divorce. We disagree.

We review alleged jury charge error for abuse of discretion. *See Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006); *Allstate Ins. Co. v. Hunter*, 242 S.W.3d 137, 139 (Tex. App.—Fort Worth 2007, no pet.). The trial court has broad discretion in submitting jury questions so long as the questions submitted fairly place the disputed issues before the jury. *Hunter*, 242 S.W.3d at 139; *Toles v. Toles*, 45 S.W.3d 252, 263 (Tex. App.—Dallas 2001, pet. denied). This broad discretion is subject only to the limitation that controlling issues of fact must be submitted to the jury. TEX. R. CIV. P. 278; *Hunter*, 242 S.W.3d at 140. A trial court abuses its discretion by acting arbitrarily, unreasonably, or without consideration of guiding principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

"Either party may present to the court and request written questions . . . to be given to the jury." TEX. R. CIV. P. 273. "Such requests shall be prepared and presented to the court and submitted to opposing counsel for examination and objection within a reasonable time after the charge is given to the parties or their attorneys for examination." *Id.* "A party objecting to a charge must point out distinctly the objectionable matter and the grounds for the objection." TEX. R. CIV. P. 274. "The court shall submit the questions . . . which are raised by the written pleadings and the evidence." TEX. R. CIV. P. 278. Generally, "[f]ailure to submit a question shall

not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment." *Id.*

Although the record shows that Joe attempted to make fault an issue at trial, he does not point to any place in the record where a written request for a jury question regarding fault is located, nor have we found one in our own search of the record. Furthermore, the record shows that Joe expressly stated he had no objection when the trial court asked whether he had any objection to "this instruction and this question with these ten assets being the entirety of the charge that's submitted to the jury." For these reasons, we conclude that Joe failed to preserve this issue for our review. *See* TEX. R. APP. P. 33.1(a); TEX. R. CIV. P. 273, 274, 278; *McIntyre v. Comm'n for Lawyer Discipline*, 247 S.W.3d 434, 446 (Tex. App.—Dallas 2008, pet. denied) (error in failure to submit jury instruction not preserved where record did not show appellant requested instruction and obtained a ruling).

Furthermore, even if this issue was preserved, we could not grant Joe relief. Fault was not a question raised by the live written pleadings.[2] Therefore, the trial court would not have erred by refusing to submit that question to the jury even if it were properly requested. *See* TEX. R. CIV. P. 278. Accordingly, we overrule Joe's first issue.

## LIVE PLEADING

In Joe's second issue, he argues that the trial court erred by "changing [his] live pleading back to his original Answer and refusing to address [his] Counterclaim." In his third issue, he argues that the court erred by "changing [his] live pleading during the trial." Essentially, Joe contends that the court erred by striking his first amended answer as untimely filed. Kristin contends that these issues should be overruled because Joe has not shown that (1) he timely filed his first amended answer in conformance with the court's docket control order, (2) he filed a motion for leave to file his first amended answer, (3) the court granted leave to file his first amended answer, or (4) Joe asserted any legal objection or argument at trial concerning which answer was the live pleading. Based on the record before us, we cannot conclude that the court abused its discretion by striking Joe's first amended answer.

---

[2] Joe disputes the trial court's determination that his original answer was the live pleading. We address this contention below.

Under the Texas Rules of Civil Procedure,

> [p]arties may amend their pleadings, respond to pleadings on file of other parties, . . . and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

TEX. R. CIV. P. 63. Rule 166 authorizes the trial court to enter various pretrial orders including one for a cut-off date on amendments to pleadings. *See* TEX. R. CIV. P. 166. The right of amendment under Rule 63 is subject to the opposing party's right to show surprise, as determined in the exercise of the trial court's discretion. *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980). This showing may be based on the court's conclusion that the amendment on its face is calculated to surprise or that it would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial. *Id.* When amendments that introduce new substantive matters are refused by the court under Rule 63, the burden of showing an abuse of discretion is on the complaining party, rather than on the opposite party to show surprise. *Id.* On appeal, the court's ruling will not be disturbed unless the complaining party clearly shows an abuse of discretion. *Id.* These rules apply whether the amendment is offered for filing within seven days of trial or after the cut-off date ordered under Rule 166. *See Bracton Corp. v. Evans Constr. Co.*, 784 S.W.2d 708, 711 (Tex. App.—Houston [14th Dist.] 1990, no writ) (no abuse of discretion where court refused to grant leave to file amendment setting forth new affirmative defenses sixty-five days after pleading amendment cut-off date under docket control notice).

Here, Joe filed his first amended answer and counterclaim about three months after Kristin filed her second amended petition and about two months before trial. No motion for leave appears in the record. The parties agree that Joe's amended petition and counterclaim were filed after the pleading amendment cut-off date under the trial court's docket control order. Joe asserts the docket control order required that filings occur no later than 105 days before trial but also states, "This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings."

At a pretrial conference on December 31, 2021, the trial court and the parties discussed the question of the live pleadings. Kristin asserted that Joe's amended petition and counterclaim

4

were untimely filed. She agreed that her third amended petition, filed after Joe's amended petition and counterclaim, was untimely as well and her live pleading was her second amended petition. The court did not decide which pleadings were live at the pretrial conference but said it would clarify the matter on the day of trial. Neither party objected to this procedure. At trial, the court clarified that it had not granted leave for either party to file untimely pleadings, and the live pleadings were Kristin's second amended petition and Joe's original answer. In response, Joe stated it was his "understanding [that his] latest pleading was a counterclaim," but he raised no legal objection.

On appeal, Joe argues that the trial court erred by striking his counterclaim because it was filed in response to Kristin's second amended petition and, therefore, excluded from the docket control order's filing deadline. He contends that the second amended petition falsely alleged cruelty and adultery against him and constituted emotional cruelty by Kristin. The appellate record does not demonstrate that Joe raised these arguments in the trial court. *See* TEX. R. APP. P. 33.1(a). Moreover, even if he raised the arguments below, the court could have nonetheless reasonably found that his counterclaim was untimely because it did not meet the requirements of the docket control order's exception for "prompt" and "directly responsive" filings. Joe's counterclaim does not allege emotional cruelty by Kristin arising from the allegations in her second amended petition, nor does it directly respond to that petition in any other way.

Next, we address whether the trial court erred by failing to grant Joe leave to untimely file his counterclaim. It is questionable whether this issue is preserved for our review because although the record shows that Joe repeatedly attempted to adduce fault evidence at trial, it does not show that he filed a motion for leave or otherwise requested leave to file the counterclaim. *See id.* Furthermore, even if he requested leave, the court would not have erred to deny the request. Joe's counterclaim, which sought to add a new ground for divorce of fault based on cruel treatment, would have introduced new substantive matters into the case that would have reshaped the lawsuit, prejudicing Kristin and unnecessarily delaying the trial. *See **Duwe v. Duwe***, No. 2-06-053-CV, 2007 WL 174407, at *4 (Tex. App.—Fort Worth January 25, 2007, no pet.) (mem. op., not designated for publication) (no error in denying leave to file untimely counterpetition that presented new ground of fault based on cruel treatment). Based on our review of the record, we conclude that Joe has not carried his burden of showing that the trial court would have abused its discretion by denying him leave to file his counterclaim. *See*

*Hardin*, 597 S.W.2d at 349.  For the foregoing reasons, we overrule Joe's second and third issues.


**PROPERTY DIVISION**

In Joe's fourth issue, he argues that the trial court erred by granting Kristin a greater share of the marital dwelling than she requested and a disproportionate share of the marital assets.

**Standard of Review**

In a decree of divorce, a court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party.  TEX. FAM. CODE ANN. § 7.001 (West 2020).  We review a trial court's division of property under an abuse of discretion standard.  ***Moroch v. Collins***, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied); *see also **Garza v. Garza***, 217 S.W.3d 538, 548 (Tex. App.—San Antonio 2006, no pet.).  A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision.  ***Garza***, 217 S.W.3d at 549; ***Moroch***, 174 S.W.3d at 857.  It is this court's duty to consider every reasonable presumption in favor of the proper exercise of discretion by the trial court in dividing the community estate.  ***Loaiza v. Loaiza***, 130 S.W.3d 894, 899 (Tex. App.—Fort Worth 2004, no pet.) (citing ***Murff v. Murff***, 615 S.W.2d 696, 698 (Tex. 1981)).  Moreover, we should reverse a court's division of property only if the error materially affects the court's just and right division of the property.  ***Henry v. Henry***, 48 S.W.3d 468, 475 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  However, once reversible error affecting the "just and right" division of the community estate is found, an appellate court must remand the entire community estate for a new division.  ***Sheshtawy v. Sheshtawy***, 150 S.W.3d 772, 780 (Tex. App.—San Antonio 2004, pet. denied) (quoting ***Jacobs v. Jacobs***, 687 S.W.2d 731, 733 (Tex. 1985)).

Where findings of fact and conclusions of law are not properly requested and none are filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence.  ***In re W.E.R.***, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam).  In determining whether some evidence supports the judgment and the implied findings of fact, "it is proper to consider only that evidence most favorable to the issue and to disregard entirely that

which is opposed to it or contradictory in its nature." ***Worford v. Stamper***, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

**Applicable Law**

A trial court is charged with dividing the marital estate in a "just and right" manner. TEX. FAM. CODE ANN. § 7.001; ***Gardner v. Gardner***, 229 S.W.3d 747, 756 (Tex. App.—San Antonio 2007, no pet.). The court has wide discretion in dividing the estate. ***Murff***, 615 S.W.2d at 698. The court is not required to divide the estate equally and may order an unequal division when a reasonable basis exists for doing so. ***Id.*** at 698-99; ***Gardner***, 229 S.W.3d at 756; ***Prague v. Prague***, 190 S.W.3d 31, 41 (Tex. App.—Dallas 2005, pet. denied). Factors to consider in dividing the estate include the parties' capacities and abilities; benefits the party not at fault would have derived from continuation of the marriage; business opportunities; education; the parties' physical conditions; the parties' financial conditions and obligations; the size of the separate estates; the nature of the property; and disparities in earning capacities and incomes. *See Murff*, 615 S.W.2d at 699. The circumstances of each marriage dictate what factors should be considered in division of the marital estate. ***Young v. Young***, 609 S.W.2d 758, 761 (Tex. 1980).

Property possessed by either spouse during or at the dissolution of the marriage is presumed to be community property, but the presumption may be rebutted by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(a) (West 2006); ***Cockerham v. Cocherham***, 527 S.W.2d 162, 167 (Tex. 1975). Any doubt as to the character of property should be resolved in favor of the community estate. ***Sink v. Sink***, 364 S.W.3d 340, 345 (Tex. App.—Dallas 2012, no pet.). In the context of a divorce proceeding, characterization of property is determined by the time and circumstances of its acquisition. ***Rivera v. Hernandez***, 441 S.W.3d 413, 420 (Tex. App.—El Paso 2014, pet. denied). Separate property consists of all the spouse's property, both real and personal, that is owned or claimed before marriage, and that is acquired after marriage by gift, devise, or descent. TEX. CONST. art. XVI, § 15. Community property consists of property, other than separate property, acquired by either spouse during marriage. TEX. FAM. CODE ANN. § 3.002 (West 2006). Clear and convincing evidence is the burden of proof necessary to establish that property is separate property. ***Id.*** § 3.003(b). Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the

7

trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

## Community Property Division

At trial, Kristin testified that Joe is twenty-three years older than her and was seventy-five years old at the time of trial. Kristin has two masters degrees and a Ph.D. She is employed as a high school English teacher earning over $60,000 annually. Kristin has a retirement account with a value of about $86,000. Joe is a retiree after twenty-six years of military service before the marriage and has an income of just under $40,000. He also retired from teaching during the marriage. When he retired from teaching, he withdrew his $23,000 teacher retirement and deposited it in the parties' joint account. For twenty-five years, Joe paid a monthly fee to the Department of Defense for a survivor benefit plan that would have entitled Kristin to fifty-five percent of his monthly retirement pay upon his death. During the marriage, Kristin inherited about $100,000, which was used for community expenses.

Kristin filed with the trial court a proposed property division in which she listed two houses, financial accounts, numerous vehicles, tools, and other assets and debts of the parties. She valued the house on Diamond Creek Drive at $814,070.00, minus $117,127.19 in unpaid taxes, and requested that she receive sixty percent of the proceeds after its sale. She valued the house on Windy Point Drive at $223,855.00, minus a debt of $101,245.73, and requested fifty percent of the proceeds after its sale. Each party would retain half of the checking and saving accounts. Kristin would retain her teacher retirement account. She would also retain her $101,966.88 student loan debt and her $13,226.80 divorce attorney's fee debt. After these and the remaining debts and assets were totaled, Joe would receive $388,490.89 (47%) of the community estate, and Kristin would receive $433,790.32 (53%) of the community estate. Joe's survivor benefit plan is listed as his separate property in the proposed division.

Kristin testified that she believed her proposed division to be just and right. In support of her belief, she noted that most of her student loan debt was incurred to pay community living expenses. Next, the majority of Kristin's attorney's fees were incurred as a result of the jury trial that Joe demanded, while others were incurred as a result of Joe's multiple requests for continuance and uncooperativeness in scheduling mediation. Moreover, Kristin would retain a $5,960.67 Home Depot credit card debt that was incurred for materials to be used in both houses. Additionally, Joe traveled to Kentucky and Indianapolis during the pendency of the case, while

Kristin did not travel.  Finally, Joe paid his $2,500.00 Discover credit card debt in full during the pendency of the case, while Kristin made only minimum payments on her $5,751.61 Discover credit card debt.  Elsewhere in her testimony, Kristin testified that she forwent saving more money for retirement because she was relying on the survivor benefit plan payments.

In its ruling, the trial court granted the divorce on the grounds of insupportability. The court awarded the Windy Point house and its debt in full to Joe.  The court further awarded Joe half the checking and savings accounts, various tools and vehicles, and various debts. The court ordered that the Diamond Creek house be sold and 65% of the net sales proceeds be distributed to Kristin and 35% be distributed to Joe. Neither party objected to the division nor requested findings of fact and conclusions of law.

On appeal, Joe argues that the trial court erred when it awarded an "outrageously disproportionate share" of the community estate to Kristin. Joe further complains that the court awarded Kristin 65% percent of the Diamond Creek house without explanation or finding of special circumstances.  Although a trial court must make written findings of fact and conclusions of law on a party's request, the record here does not indicate that such a request was made.  *See* TEX. FAM. CODE ANN. § 6.711 (West 2020).  Based on our review of the record, Joe received about $409,643.34 (49%) of the community estate, while Kristin received about $427,751.20 (51%).  Mathematical precision in dividing property in a divorce is usually not possible.  ***Murff***, 615 S.W.2d at 700.  Considering only the evidence most favorable to the court's division, we conclude that the trial court did not abuse its discretion.  *See **Worford***, 801 S.W.2d at 109. Accordingly, we overrule Joe's fourth issue.

### LIFESTYLE QUESTIONS

In Joe's fifth issue, he argues that the trial court erred by "protecting" Kristin from questions regarding her lifestyle after she testified the marriage was traditional.  In his statement of facts, Joe alleges that he was not allowed to ask such questions during either the jury or bench trial in violation of his rights to due process and equal protection.  He cites no specific ruling by the court other than its refusal to accept his untimely counterclaim, which we concluded above was not error. Joe does not address this issue in the argument section of his brief.

Rule 38.1 of the Texas Rules of Appellate Procedure mandates that an appellant's brief contain a clear and concise argument for the contentions made, with appropriate citations to

authorities and the record. TEX. R. APP. P. 38.1(i). The failure to brief, or to adequately brief, an issue by an appellant effects a waiver of that issue on appeal. *General Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 n.1 (Tex. 2001). We have liberally construed Joe's brief in order to give effect to his arguments. *See* TEX. R. APP. P. 38.9. But it is not our duty to review the record, research the law, and fashion a legal argument for an appellant when he has failed to do so. *Zhang v. Capital Plastic & Bags, Inc.*, 587 S.W.3d 82, 90 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). Joe's brief does not contain a clear and concise argument and contains no appropriate citations to authorities or the record regarding issue five. In addition, he did not argue this issue before the trial court. *See* TEX. R. APP. P. 33.1. Accordingly, we hold that he has waived any alleged error with respect to issue five.

## DISPOSITION

Having overruled Appellant's first, second, third, and fourth issues and concluded that his fifth issue is waived, we *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered February 28, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 28, 2023**

**NO. 12-22-00086-CV**

**BOBBY JOE HALL,**
Appellant
V.
**KRISTIN KISTNER HALL,**
Appellee

---

Appeal from the 418th District Court

of Montgomery County, Texas (Tr.Ct.No. 21-04-05600-CV)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, all costs of this appeal are assessed against Appellant, **BOBBY JOE HALL**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*